**Edmond J. DuSESOI, Plaintiff,**

v.

**UNITED REFINING COMPANY, a Pennsylvania corporation, and Harry A. Logan, Jr., an individual, Defendants.**

**Civ. A. No. 81–93 ERIE.**

United States District Court, W. D. Pennsylvania.

June 9, 1982.

H. Yale Gutnick, Thomas M. Zwilling, Pittsburgh, Pa., for plaintiff.

Frederick M. Lowther, Washington, D. C., Robert S. Whitehill, Pittsburgh, Pa., for defendants.

## OPINION

WEBER, Chief Judge.

In January of 1981 the plaintiff in this action, Edmond J. DuSesoi, was employed as the Vice-President of United Refining International, a wholly-owned subsidiary of United Refining Company. One month later DuSesoi was unemployed, his position with International having been terminated effective January 31, 1981 because of a corporate take-over of United. It is this abrupt change in Mr. DuSesoi's employment status which forms the basis of this lawsuit.

On May 5, 1981, DuSesoi filed a five count complaint in this court. In this complaint DuSesoi named United Refining Company and its President, Harry Logan, as defendants. The complaint alleged that United breached a written three year employment contract with the plaintiff (Count I); that United breached a three year oral employment contract (Count II); that Logan breached his warranty of authority to contract on behalf of United (Count III); that United and Logan fraudulently misrepresented the terms of the plaintiff's employment contract (Count IV); and that Logan tortiously interfered with the plaintiff's employment relationship (Count V). Presently this case is before us on defendants' motion for summary judgment. In this motion the defendants raise six separate contentions, each of which is directed to one or more counts of plaintiff's complaint. First, the defendants allege that any contract the plaintiff had was with United Refining International (International) and not with United Refining Company (United). Since International and United are separate corporate entities defendants urge us to dismiss all of the plaintiff's breach of contract claims against United.

Second, defendants contend that the written contract between the parties was one of indefinite duration and, as such, terminable at will. Third, defendants argue that any oral agreement between the parties is unenforceable under the applicable statute of frauds. Fourth, defendants assert that Logan did not breach any warranty of authority during his negotiations with DuSesoi. Fifth, defendants contend that, as a matter of law, the statements made to DuSesoi do not constitute fraudulent misrepresentations. Sixth, the defendants argue that Logan, as President of United Refining Company, was privileged in any action he took with respect to DuSesoi's employment with United. Some of these questions involve solely matters of law, some require the consideration of factual matters where our function is to determine the existence of a dispute as to a genuine issue of material fact. The parties have filed affidavits and documents sufficient under the standards of Fed.R.Civ.P. 56 on the issues of fact. The legal contentions have been fully briefed by both parties and are, therefore, now ripe for our disposition.

## I. FACTS

The business dealings which ultimately led to this lawsuit began in January of 1980, approximately one year prior to DuSesoi's discharge. At that time the plaintiff was living in Kansas City, Missouri, where he was employed as a Senior Vice-President for Hudson Refining Company. In January or February of 1980, DuSesoi was approached regarding the possibility of employment with the United Refining Company.

At this time United was engaged in efforts to develop a crude oil trading capacity in Houston, Texas. As part of its plans United, through its President Logan, began negotiations with DuSesoi. These negotiations were aimed at securing DuSesoi's employment as head of this crude oil trading operation.

Logan and DuSesoi met four times between February and June of 1980 to negoti-

ate an employment contract. These meetings were held in Chicago, New York City, New Orleans and Warren, Pennsylvania.

At these meetings a principal point for discussion was the plaintiff's salary demand. Ultimately Logan and DuSesoi agreed upon an annual salary of $85,000. Because this salary exceeded the salary scale paid by United to its employees it was agreed that DuSesoi would not work directly for United. Rather DuSesoi would be employed by United Refining International, a wholly-owned subsidiary of United Refining.

On June 25, 1980, Logan wrote to DuSesoi confirming the terms of the agreement reached by the parties. In this letter Logan explained that DuSesoi would be employed through International; outlined DuSesoi's duties; and described the salary and benefits to which he would be entitled. The letter was silent with respect to the term of DuSesoi's employment.

Two weeks later, on July 11, 1980, DuSesoi responded by letter to this communication from Logan. In his letter DuSesoi indicated that he intended to accept Logan's offer of employment with United Refining International. DuSesoi stated, however, that "several topics in [Logan's] letter ... seemed to require clarification." Included among these topics was the proposed term of DuSesoi's employment. With respect to this topic DuSesoi noted that the parties "had talked of three years and severance of one year." DuSesoi pointed out that the June 25th letter from Logan was "silent on this subject." Four days later, on July 15, 1980, Logan responded to this letter from DuSesoi. In his letter Logan indicated that he was pleased that the plaintiff had decided to accept employment with United Refining International. Logan went on to point out that "your letter also indicates that there may be some misunderstandings between us. It was my intention that you would receive a salary commensurate with the responsibilities of this subsidiary and also to participate in such other

employment benefits as are granted to executive employees of the parent company. An employment contract with a severance agreement goes beyond this. You may wish to discuss this and other matters with me and I am available during regular business hours to do so."

DuSesoi subsequently accepted this position when United Refining International moved from Kansas City to Houston and in August of 1980 began work.

In the latter part of 1980, United Refining was acquired by Coral Energy, Inc., a subsidiary of Coral Petroleum, Inc. Coral already maintained a large crude oil trading department in Houston, Texas. Because Coral already had an established crude oil trading department the services previously provided for United by International were no longer needed. Therefore, on December 29, 1980 Logan instructed DuSesoi to terminate all of International's operations in Houston. Shortly thereafter DuSesoi was informed that his services were no longer required by United or International. This lawsuit followed.

## II. DISCUSSION

As we have previously noted the plaintiff in this case has filed a multi-count complaint. This has evoked a response from the defendants in the form of a multi-faceted motion for summary judgment. This motion raises six separate defenses; each of which attacks one or more of the plaintiff's claims.

■ The parties have briefed this motion extensively, devoting particular attention to the choice-of-law problems presented by the business dealings of DuSesoi and Logan. For its part the plaintiff attempts to use these choice-of-law considerations as a shield, arguing that uncertainty as to the applicable law precludes summary judgment at this time. We believe that the plaintiff's reliance on this issue as a bar to

summary judgment is misplaced. On most of the issues raised by the defendants' motion the law of the relevant jurisdictions is essentially the same.[1] Therefore, as to these issues the question of choice-of-law presents little difficulty. Moreover where there are significant differences in state law we feel that the record is sufficiently developed to enable us to determine which jurisdiction's law applies. Therefore, we would reject the plaintiff's contention that uncertainty regarding the applicable law completely precludes consideration of this motion. Accordingly, we will proceed with a consideration of the individual defenses presented by that motion.

The first defense raised in this motion addresses counts I and II of the plaintiff's complaint. In these counts asserted against Defendant United the plaintiff alleges that his termination after only five months violated written and oral tree year employment contracts. In their motion for summary judgment the defendants point out that the plaintiff's employment agreement was with International and not United. Since United is not a party to this employment contract, defendants argue that they cannot be held liable for any alleged breach of this agreement.

The plaintiff has responded by conceding that his nominal employer was International and not United. The plaintiff asserts, however, that this arrangement was made solely to conceal the plaintiff's salary from United's payroll department. The plaintiff also states that he understood that he was working directly for United and that his job was in no way dependent upon the continuing existence of International as a separate entity. (Affidavit of Edmond DuSesoi, paragraph 24). According to the plaintiff International was used simply "as a style for United to do business in Houston." Therefore, plaintiff urges that we disregard the corporate form of International and hold United directly responsible for the con-

---

1. In their briefs the parties have argued that, with respect to different counts of the plain-   tiff's complaint, the law of either Texas, Missouri or Pennsylvania would apply.

tractual defaults of its wholly-owned subsidiary.

■ The power of a court to "pierce the corporate veil" and hold a parent company liable for the contractual defaults of its subsidiary is clearly recognized in both Pennsylvania and Texas law. *Ashley v. Ashley*, 482 Pa. 228, 393 A.2d 637 (1978); *Sams v. Redevelopment Authority of New Kensington*, 431 Pa. 240, 244 A.2d 779 (1968); *Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336 (Tex.1968). It is conceded, however, that the validity of a corporate entity should not be lightly disregarded. Therefore any consideration of a request to pierce the corporate veil begins with the premise that "the corporate entity should be recognized and upheld unless specific, unusual circumstances call for an exception." *Zubik v. Zubik*, 384 F.2d 267, 273 (3d Cir. 1967), *cert. denied* 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968). Thus, under Pennsylvania and Texas law, a corporate entity is disregarded only when that entity is used to defeat public convenience, justify wrong, protect fraud or defend crime. *See, Sams v. Redevelopment Authority of New Kensington*; supra; *State v. Swift & Co.*, 187 S.W.2d 127 (Tex.Civ.App. 1945).

In this case we see little to justify holding United directly liable for the alleged contractual defaults of its subsidiary, International. The evidentiary materials submitted in support of the defendants' motion indicate that United and International took care to observe all corporate formalities. International had its own Board of Directors and held separate Board meetings. International maintained its own set of books; paid its creditors and employees; entered into contracts in its own name; and generally held itself out as a separate legal entity. (Affidavit of Harry Logan, ¶¶ 1, 2; Supplemental Affidavit of Harry Logan).

Moreover, the plaintiff, a knowledgeable businessman, contracted with International with full awareness that it was a separate corporation. In fact, at the time he entered into this agreement DuSesoi derived a direct financial benefit from employment with this subsidiary. By accepting a position with International, DuSesoi was able to receive a salary considerably in excess of that paid by United to comparably placed officers in its organization. Moreover, by plaintiff's own admission the express purpose behind his employment with International was to "mask" his salary from United's employees. (Affidavit of Edmond DuSesoi, ¶¶ 12, 13; Affidavit of Harry Logan). In short, this is not a case where a parent corporation abuses the corporate form of its subsidiary to the prejudice of innocent third parties. Rather in this case two knowledgeable parties in the course of arm's length negotiations agreed to contract through a subsidiary for their mutual benefit. In such a case we doubt that the unusual equitable relief of piercing the corporate veil is appropriate.

However, even if we decided that the plaintiff could in some way demonstrate equities sufficient to justify disregarding the corporate form of International, we still would dismiss the breach of contract claims pending in this case. We would take this action because we believe that these counts of the plaintiff's complaint are fatally deficient in several respects, as set forth below.

Count I of DuSesoi's complaint alleges that United violated the terms of a written three year employment contract with the plaintiff. According to the plaintiff this written contract is embodied in three letters exchanged by Logan and DuSesoi in June and July of 1980. (Paragraph 17 of Plaintiff's Complaint). In their motion the defendants now argue that this count of the plaintiff's complaint should be dismissed because the written agreement evidenced by these letters is indefinite in duration and, as such, is terminable at will.

At the outset the plaintiff seeks to escape summary judgment dismissal by arguing that it is unclear whether Texas or Pennsylvania law applies to this count of his complaint. We do not feel that this argument

bars consideration of defendant's motion for summary judgment.

In this instance the choice of law question presents little difficulty. Both Pennsylvania and Texas law recognizes that "where the meaning of a contract is clear and unambiguous its interpretation and construction are for the court, not the jury." *Hewes v. Williamson*, 412 Pa. 270, 194 A.2d 339 (1963); *See, e.g., National Products Co. Inc. v. Atlas Financial Corp.*, 238 Pa.Super. 152, 364 A.2d 730 (1975); *Caviness Packing Co. Inc. v. Corbett*, 587 S.W.2d 543, 546 (Tex.Civ.App.1979); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968); ("it is elementary that if there is no ambiguity the construction of the written instrument is a question of law for the court.") Moreover case law in both states acknowledges that a written employment contract that is indefinite as to the term of employment is terminable at will by either party. *Fawcett v. Monongahela Railroad Co.*, 391 Pa. 134, 137 A.2d 768, 771 (1958); *In re Hands Est.*, 349 Pa. 111, 36 A.2d 485 (1944); *Baker v. Lockheed Aircraft Service Co.*, 584 S.W.2d 369, 372 (Tex.Civ.App.1979). Therefore the controlling legal principles governing our consideration of this matter are the same regardless of which jurisdiction's law applies.

In this case we feel that the written agreement of the parties, as embodied in the correspondence of DuSesoi and Logan, is unambiguous. In his June 25th letter, Logan describes in detail the proposed terms of DuSesoi's employment. (Exhibit A to Plaintiff's Complaint). This letter pointedly makes no reference to a three year term of employment.[2] On July 11, 1980 DuSesoi wrote to Logan seeking clarification of this very point. (Exhibit B to Plaintiff's Complaint). Logan's response, dated July 15, 1980, unequivocally rejects DuSesoi's proposal of a three year employment contract, stating: "It is my intention that you would receive a salary commensu-

rate with the responsibilities of this subsidiary and also to participate in such other employment benefits as are granted to executive employees of the parent company. An employment contract with a severance agreement goes beyond this." (Exhibit C to Plaintiff's Complaint). In fact, it was the policy of United, International and all other subsidiaries of United not to give executives contracts of definite duration or contracts with severance provisions. (Affidavit of Harry Logan, paragraph 5).

In our view the contract embodied in these three documents is indefinite as to the term of the plaintiff's employment. Moreover, it is clear from Mr. Logan's July 15th letter that the term of employment was left indefinite by design. In fact, the plaintiff implicitly acknowledges in his affidavit that the written agreement between the parties did not contain a term of three years. In his affidavit DuSesoi stated that "after receipt of [Logan's] letter [of July 15], I held further discussions with Logan on the terms of our agreement and, *as a result of such discussions*, we agreed that the term of employment would be a minimum of three years . . .". (DuSesoi's Affidavit, paragraph 18). (emphasis added). Clearly then, according to DuSesoi, Logan agreed to a three year contract only after the exchange of this correspondence between the parties. The plaintiff has pointed to no other documentary exhibit supporting his contention that a written three year employment contract existed between these parties. Therefore, we must conclude that the three year term of employment alleged by plaintiff is not embodied in any writing.

Because the written agreement of the parties, as evidenced by their correspondence, was indefinite in duration this agreement was terminable at will by either party. Accordingly, Count I of the plaintiff's complaint which alleges breach of a three year written employment contract must be dismissed.

---

**2.** In his brief plaintiff alleges that the reference by Logan to DuSesoi's annual salary creates a presumption that the term of the agreement was for one year. This may or may not be the case. We will not address this issue, however, because none of the pleadings filed by the plaintiff allege any breach of a one year employment contract.

If plaintiff's breach of contract claim is to stand at all, it must stand on the basis of a breach of an oral agreement to employ the plaintiff for three years. In Count II of his complaint the plaintiff alleges breach of just such an oral agreement. Defendants now contend that this count of the plaintiff's complaint should be dismissed because the oral agreement alleged by the plaintiff is void under the applicable statute of frauds.

■ With respect to this count of the plaintiff's complaint, we recognize that the question of applicable law presents very real difficulties. These difficulties arise because on this point there are significant differences between the law of Texas and Pennsylvania. The Texas statute of frauds, Tex.Bus. & Comm.Code § 26.01 provides that "A promise or agreement ... is not enforceable unless the promise or agreement, or memorandum of it, is (1) in writing, and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him." Included among the agreements whose enforcement is barred by this statute is any "agreement which is not to be performed within one year from the date of making the agreement...". Tex.Bus. & Comm.Code § 26.01(b)(6). Thus, under Texas law it appears that an oral three year employment contract would be unenforceable. See, *Mercer v. C. A. Roberts Co.*, 570 F.2d 1232, 1235–36 (5th Cir. 1978).

The statute of frauds in effect in Pennsylvania contains no comparable limitation on the enforcement of oral agreements. *See,* 33 Pa.Stat. §§ 1–6. Therefore, if Pennsylvania law applies to this cause of action the statute of frauds would in no way bar the plaintiff's claim. Clearly, then, a determination of the applicable law is a necessary prerequisite to any resolution of the defendant's motion.

■ Determination of the applicable law is an issue whose resolution is entrusted exclusively to the court. Resolution of this issue, however, cannot be accomplished through the application of some simple mechanical formula. Instead it requires "the exercise of an informed judgment in the balancing of all the interests of the [competing] states ... in order best to accommodate the equities among the parties to the policies of these states." *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 161–162, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946). Thus this legal determination is frequently premised upon a consideration of the facts attending the individual case.

■ This does not mean, however, that choice of law questions cannot be determined on a motion for summary judgment. Quite the contrary, when the factual record is adequately developed, summary judgment determination of the applicable law is entirely appropriate. *See, Thoma v. Wolverine World Wide, Inc.*, 352 F.Supp. 580 (W.D.Pa.1972).

In this case the parties have submitted extensive evidentiary materials in the form of affidavits and documentary exhibits. We believe, therefore, that the record is sufficiently developed to allow us to make a determination of the applicable law.

In a diversity case a federal district court is bound by the choice of law rules of the state in which it sits. Therefore, in this case Pennsylvania's choice of law rules will apply to the issues raised by this motion. *Klaxon v. Stentor Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

The principles controlling choice of law determinations in Pennsylvania have been in flux since the Pennsylvania Supreme Court's ruling in *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). *Griffith* was a tort case involving an airplane accident in Colorado. At the time of this accident Pennsylvania courts adhered to the doctrine of lex loci delecti in making choice of law determinations in tort cases. Under this doctrine the law of the place of injury defined the rights and duties of the litigants. Applying this rule the trial court in *Griffith* held that the law of Colorado controlled on the matter of recoverable damages.

The Pennsylvania Supreme Court reversed. In a landmark opinion the court examined and rejected the doctrine of lex loci delecti. In rejecting this doctrine the court emphasized that the rule was wooden and mechanical in its application. In its place the court adopted a flexible mode of analysis. This analytical framework was something of a hybrid. It combined the conflicts of law approach adopted by the Restatement, Second, with a separate analysis of the interests of each jurisdiction in the pending litigation. Under this analytic framework a court, in making choice of law decisions, considers both the contacts of each jurisdiction with the subject matter of the lawsuit and the interests and policies which these jurisdictions may validly assert in the lawsuit. *Melville v. American Home Assur. Co.*, 584 F.2d 1306, 1311–13 (3d Cir. 1976).

This flexible approach to choice of law questions, adopted by *Griffith* in tort actions, has subsequently been extended to breach of contract cases as well. See, e.g. *Melville v. American Home Assur. Co.*, *supra, DeAngelis v. Scott*, 337 F.Supp. 1021 (W.D.Pa.1972), (applying Pennsylvania law). Therefore in this case we will apply the *Griffith* analysis to the choice of law questions raised by the parties.

In determining in a contract case which jurisdiction has the most significant relationship to the subject matter of a lawsuit we consider the contacts that each jurisdiction has with the transaction which has led to the lawsuit. In examining the contact that a jurisdiction has with a transaction one looks to a number of factors including: the place of contracting; the place of negotiation of the contract; the place of performance of the contract; the location of the subject matter of the contract; and the domicile or residence of the parties to the transaction. Restatement, Second, Conflict of Laws, § 188.

In this case several of these factors mitigate strongly in favor of the application of Texas law to the plaintiff's claims. At the outset it is clear that the parties to this transaction contemplated that their agreement would be performed primarily in Texas. This intention is manifested in the correspondence of the parties, correspondence which expressly states that the purpose behind establishing International and employing DuSesoi is to develop a crude oil trading capacity in Houston, Texas. (Exhibit A to the plaintiff's complaint).

It is also reflected in the actions taken by the parties following their agreement. For example, after agreeing to work for International, DuSesoi sold his home in Missouri moved to Texas and established a permanent residence in Houston. (Affidavit of Edmond DuSesoi, ¶ 26). Similarly, in the summer and fall of 1980, International took steps aimed at centering its operations in Texas. In August of 1980, International opened an office in Houston. At the same time International established a corporate bank account with a Houston bank and hired personnel to staff its new Houston office. (Further supplemental affidavit of Harry Logan ¶¶ 2, 3).

The fact that Texas was the focus of International's operations is also revealed by a report prepared by the plaintiff in October of 1980 for submission to the Texas Employment Commission. In this report DuSesoi stated that none of International's employees had performed services outside of Texas since January 1, 1971. (Exhibit II, supplemental affidavit of Harry Logan). In fact, there are no evidentiary materials indicating that International maintained permanent offices or staff in any city other than Houston during this entire period. (Further supplemental affidavit of Harry Logan, ¶ 2).

These facts convince us that the place of performance for DuSesoi's contract was Houston, Texas. The fact that Logan informed DuSesoi that he would be required to travel abroad in the course of his employment for International in no way alters this conclusion. As we have noted above International was headquartered in Houston. Moreover, in order to work for International DuSesoi established his permanent residence in Texas. There is nothing in the record which indicates that DuSesoi per-

formed substantial services for International in any jurisdiction other than Texas. Therefore, we believe that DuSesoi's activities abroad were merely incidental to his primary employment in Texas.

Similarly, we believe that the subject matter of this contract was also located in Texas. In an employment agreement the subject matter of the contract is the service to be rendered. In this case the service that International provided was a crude oil trading capability in Houston, Texas. In order to provide this service the parties contemplated that DuSesoi's work would be done primarily in Texas. Therefore the subject matter of this agreement was necessarily centered in Texas.

Of the remaining contacts relevant to our inquiry several are, at best, equivocal as to which jurisdiction's law should apply. For example in this case place of negotiation adds little to our understanding of the choice of law problem raised by the parties. This agreement was negotiated over the span of several months. Direct negotiations were conducted in four different locations—Chicago, New Orleans, New York City, and Warren, Pennsylvania. (Affidavit of Edmond DuSesoi ¶¶ 5, 7, 8, 15). Even after the last of these meetings the parties continued to exchange correspondence clarifying and modifying the terms of their proposed agreement. (Affidavit of Edmond DuSesoi, ¶¶ 17, 18). At the time of this exchange of correspondence the plaintiff was residing in Missouri and Texas. Defendant Logan was a resident of Pennsylvania. Accordingly negotiations on this contract took place in no less than six states. This being the case we believe that this factor adds nothing to the court's understanding of which state's law should apply.

Similarly, the residence of the parties to this action casts little light on the question of applicable law. The plaintiff in this case is a resident of Texas. (Paragraph 1 of Plaintiff's Complaint). United Refining International, although a Pennsylvania corporation, was headquartered in Houston, Texas. (Further supplemental affidavit of Harry Logan, ¶ 2). The defendants United Refining and Harry Logan are Pennsylvania residents. Therefore as between Pennsylvania and Texas the residence of the parties to this agreement is fairly evenly divided.

Finally, while we recognize that Logan and DuSesoi initially agreed on their contract at a meeting held in Warren, Pennsylvania, we do not believe that this factor alone justifies the application of Pennsylvania law to plaintiff's claims. At the outset it is clear that "standing alone the place of contracting is a relatively insignificant contract", in determining which state has the most significant relationship to a transaction. Restatement 2nd, Conflicts of Law, § 188, comment c.

Moreover in this case whatever relevance place of contracting might have is lessened by the fact that, following the meeting in Warren, the parties held additional discussions regarding the terms of DuSesoi's employment. As a result of these discussions plaintiff alleges that agreement was reached on a three year employment contract. This three year term of employment is the very crux of the plaintiff's breach of contract claim. Yet it is apparent from the plaintiff's affidavit that agreement was reached on this question only after the parties met in Warren. (Affidavit of Edmond DuSesoi, ¶ 18). Therefore, that part of the contract that is crucial to the plaintiff's cause of action was not agreed upon at the Warren Pennsylvania meeting. This being the case we feel that place of contracting deserves little weight in our choice of law determination.

In summary when considering the contacts of these jurisdictions with this transaction we conclude that Texas was the focal point for both DuSesoi's employment and the operations of United Refining International. Texas is also the state in which the plaintiff resides. In fact the plaintiff moved to Texas for the specific purpose of working for International. Thus we believe Texas is the jurisdiction with the most significant contact with the subject matter of this lawsuit.

Turning to the second part of the *Griffith* analysis we believe that this litigation also involves interests and policies over which Texas has a particular concern. Texas has, by statute, barred the enforcement of oral contracts whose performance extends beyond one year. See, Tex.Bus. & Comm. Code, § 26.01. The oral agreement alleged by the plaintiff in his complaint was to extend over three years. As we have previously determined, the parties to this contract contemplated that their agreement would be performed primarily in Texas. Since this agreement was to be performed in Texas, that state clearly has a significant interest in seeing that its law is applied in interpreting that agreement. In contrast Pennsylvania has no comparable policy or interest which it might seek to assert in this action.

Accordingly, we find that Texas is the jurisdiction with the most significant contacts with the subject matter of this lawsuit. Similarly Texas has important state policies which it may validly assert in this action. Therefore, the law of Texas should govern the claims set forth in Count II of the plaintiff's complaint in this action.

■ Having determined that Texas law should apply, we find resolution of the substantive question raised by the defendants' motion relatively easy. The Texas Business & Commercial Code bars the enforcement of any oral agreement "which is not to be performed within one year from the date of making the agreement." Tex.Bus. & Comm.Code, § 26.01(b)(6). In this case the plaintiff alleges the existence of an oral agreement to employ DuSesoi for 3 years. Obviously, this agreement cannot be performed within one year from the making of the contract. Therefore, the oral agreement alleged by the plaintiff in this case would be void under the Texas statute of frauds.

■ Moreover, we can find no reason under Texas law for not applying the statute of frauds in the instant case. For example, the plaintiff cannot escape the effect of the statute by arguing that a written memorandum of this agreement exists. Under Texas law the parties to a contract cannot rely upon a written memorandum to avoid the statute of frauds unless that memorandum sets forth all material terms of the parties' oral agreement. *Jackman v. Anheuser-Busch, Inc.,* 162 S.W.2d 744, 746 (Tex.Civ.App.1942). In this case the parties' oral agreement is alleged to have included a three year term of employment. The written memorandum of this agreement, however, does not include such a term. Therefore, this memorandum does not avoid the effect of the statute of frauds.

■ Nor can the plaintiff save this alleged oral agreement by arguing that partial performance precludes enforcement of the statute. When dealing with oral employment contracts, Texas law has enforced the statute of fraud strictly and has held that partial or full performance of the agreement does not render the statute inoperative. See, e.g. *Choleva v. Spartan Aviation, Inc.,* 524 S.W.2d 739, 742 (Tex.Civ.App. 1975). (Affirming summary judgment dismissal of plaintiff's complaint on the basis of the statute of frauds, despite allegation that partial performance of a two year oral employment contract rendered the statute inoperative); *Collins v. McCombs,* 511 S.W.2d 745 (Tex.Civ.App.1974 writ ref. n. r. e.), (affirming summary judgment dismissal of plaintiff's complaint.) [3]

---

3. We recognize that some Texas cases argue that, in specific limited instances, partial performance of an oral employment contract may remove that agreement from the bar of the statute of frauds. *See, Paschall v. Anderson,* 127 Tex. 251, 91 S.W.2d 1050 (1936 opinion adopted). The plaintiff has not pleaded any of these special circumstances; nor has he presented any evidentiary materials demonstrating that unusual circumstances exist in this case which would render the statute inapplicable. In the absence of such pleadings or proof this oral agreement cannot be enforced. *Mercer v. C. A. Roberts Co.,* 570 F.2d at 1237.

Since we do not dismiss plaintiff's complaint in its entirety the plaintiff may wish to amend his pleadings to allege circumstances which would remove this contract from the bar of the statute.

In sum, then, under Texas law enforcement of an oral agreement to employ the plaintiff for three years would be barred by the statute of frauds. This being the case Count II of the plaintiff's complaint, which alleges such an oral agreement, must be dismissed.

In Count III of his complaint asserted against the defendant Logan the plaintiff alleges that, during negotiations, Logan represented to him that he had the authority to contractually bind both United Refining and United Refining International. Plaintiff relied upon these representations of authority when entering into an agreement with Logan. Yet, according to the plaintiff Logan in fact was not authorized to enter into contracts on behalf of either of these corporations. Therefore, the plaintiff seeks damages from Logan for this alleged breach of warranty of authority.

■ This contention requires little discussion. The evidentiary material submitted with defendant's motion indicate that Logan was the President of both United and International throughout the entire period covered by this lawsuit. (Affidavit of Harry Logan, ¶ 8 of plaintiff complaint). Under both Texas and Pennsylvania law, the President of a corporation has the authority to bind that corporation contractually. *See, P. Curtis Ko Eune Co. v. Manayunk Yarn Mfg. Co.,* 260 Pa. 340, 103 A. 720 (1918); *Leak v. Halaby Galleries, Inc.,* 49 S.W.2d 858 (Tex.Civ.App.1932); *Hackney v. York,* 18 S.W.2d 923 (Tex.Civ.App.1929). See generally, 5 A.L.R. 1483 and cases cited therein. Therefore, Logan clearly had the authority to bind both United and International. This being the case it is apparent that the plaintiff's claim of breach of warranty of authority cannot stand. Accordingly, we will order Count III of the plaintiff's complaint dismissed.

In Count IV of his complaint the plaintiff alleges that defendants United and Logan represented to him that his employment would be for a term of three years or more. In reliance on these representations the plaintiff resigned from his previous employment, sold his home and moved to Texas to begin work with International. Yet according to the plaintiff, at the time that they made these representations, the defendants knew that DuSesoi would not be retained in their employ for three years.

Plaintiff now contends that these statements made by Logan and United were fraudulent misrepresentations. As a result of his reliance on these misrepresentations the plaintiff alleges that he suffered substantial damages.

Defendants have now moved to dismiss this count of plaintiff's complaint for two reasons. First, as a threshold matter, defendants contend that this count of plaintiff's complaint in its present form fails to satisfy the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

■ Rule 9(b) is an exception to the general rule of federal practice which mandates that pleadings contain a "short and plain statement" of any claim or defense. See Fed.R.Civ.P. 8. Rule 9(b) provides that: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In order to satisfy this special pleading requirement, a party must at a minimum, "state the time, place and content of the false misrepresentation, the fact misrepresented and what was obtained or given up as a consequence of the fraud." *In re Sugar Industry Antitrust Litigation,* 73 F.R.D. 322, 349 (E.D.Pa.1976). Failure by a party to plead allegations of fraud with the particularity mandated by Rule 9(b) can result in the imposition of sanctions by the court; including in appropriate cases dismissal of the claim of fraud.

■ In this case we recognize that Count IV of the plaintiff's complaint fails in several respects to satisfy the pleading requirements of Rule 9. Specifically, the plaintiff has not set forth the time or place of the alleged misrepresentation. We also recognize, however, that in all other respects the plaintiff's complaint adequately describes the nature of the misrepresentation made to DuSesoi and the consequences suffered by DuSesoi as a result of that

misrepresentation. Accordingly in this case we feel that the sanction of dismissal is not appropriate. The Federal Rules of Civil Procedure are designed to serve as a vehicle for the efficient disposition of cases. They should not be allowed to become a trap for the unwary litigant. In this case the plaintiff can remedy the defects in his pleadings by simply amending his complaint to include the time and place of the alleged misrepresentation. Since this defect can be remedied easily, we would not impose the severe sanction of dismissal on this plaintiff. Rather, we will, sua sponte, treat defendants' motion to dismiss as a motion for more definite pleading and order the plaintiff to amend Count IV of his complaint to state with particularity the circumstances attending this alleged misrepresentation. *Shapiro v. Miami Oil Producers, Inc.*, F.R.D. 234, 237–38 (D.C.Mass.1979); *In re Sugar Industry Antitrust Litigation*, supra, at 350.

Defendants' second argument raises a far more fundamental objection to this count of the plaintiff's complaint. In their motion for summary judgment the defendants contend that, as a matter of law, the statements allegedly made do not rise to the level of fraudulent misrepresentation.

■ As a prelude to this argument the parties once again engage in an extensive debate regarding the applicable law. Defendants strenuously contend that Missouri law controls the issues raised in Count IV of this complaint. The plaintiff, on the other hand, argues that Pennsylvania law may be applicable to this count of his complaint. We feel that resolution of this question is unnecessary. In our view, under both Pennsylvania and Missouri law, Count IV of the plaintiff's complaint sets forth a valid cause of action for fraudulent misrepresentation. While plaintiff's proofs at trial may not ultimately support the averments in his pleadings, that possibility alone does not justify dismissal of this count of his complaint. Therefore, we will deny defendants' motion to dismiss Count IV of the plaintiff's complaint.

Count IV of DuSesoi's complaint alleges that the defendants misrepresented to plaintiff the term of his employment. Specifically DuSesoi alleges that the defendants stated an intention to employ him for a minimum of three years, knowing that his position would be terminated long before these three years had expired. Therefore, at the heart of Count IV of this complaint is the premise that a knowingly false statement of intent constitutes a fraudulent misrepresentation.

It is this premise which the defendants attack in their motion. According to the defendants a statement of intention to perform an agreement, which is false when uttered, does not, as a matter of law, constitute a fraudulent misrepresentation.

■ Defendants take care to frame their argument on this issue exclusively in terms of Missouri law. They do so because under Pennsylvania law it is clear that "a statement of present intention which is false when uttered may constitute a fraudulent misrepresentation of fact." *Brentwater Homes, Inc. v. Weibley*, 471 Pa. 17, 369 A.2d 1172, 1175 (1977). Thus Pennsylvania law recognizes that a party's state of mind is a fact capable of misrepresentation. Such a recognition is necessarily fatal to the position taken by defendants in this motion. Therefore, if we were to apply Pennsylvania law to this count of the plaintiff's complaint we would be compelled to deny defendants' motion.

Missouri law is far more ambiguous on the question of whether false statements of intent rise to the level of fraudulent misrepresentation. However, even under Missouri law, we believe that the plaintiff has pleaded a valid cause of action for fraudulent misrepresentation.

Missouri law on this question is characterized by two divergent, and in some respects inconsistent, lines of authority. One line of authority had adopted the view that "fraud cannot be predicated upon a mere promise even though accompanied by a present intention not to perform it on the grounds that even under such circumstances the promise is not a misrepresentation of an existing fact." *Godwin v. Dinkler St. Louis*

*Management Corp.*, 419 S.W.2d 70–72 (Mo. 1967); *Yerington v. Riss*, 374 S.W.2d 52–59 (Mo.1964); *Reed v. Cooke*, 331 Mo. 507, 55 S.W.2d 275, 278 (1932); Yet another line of cases holds that "a state of mind, an existing purpose, may be misrepresented and thus constitute a misrepresentation of fact." *Thieman v. Thieman*, 218 S.W.2d 580, 585 (1949); *Dillard v. Earnhart*, 457 S.W.2d 666, 670 (Mo.1970); *Wallach v. Joseph*, 420 S.W.2d 289, 295 (Mo.1967). The Missouri Supreme Court has implicitly recognized that these two distinct lines of authority exist, see, *Dillard v. Earnhart*, 457 S.W.2d at 670, but has never reconciled the conflicts between these cases.

This problem has received the attention of intermediate appellate courts in Missouri, however. In *Brennaman v. Andes & Roberts Bros. Construction Co.*, 506 S.W.2d 462 (Mo.App.1974), the court devoted considerable attention to this apparent conflict in Missouri law. In a lengthy opinion the court concluded that:

> The distinguishing features which harmonize these apparently divergent lines of authority are to be found in the facts of each case. In the decisions cited, appeal followed trial on the merits and therefore a factual record was available with which to measure the claimants petition allegation. On the one hand, recovery was denied where the evidence shows the alleged misrepresentation to have been a mere promise or matter of opinion subsequently unfulfilled for which the proper remedy is a suit on the promise.

> Those cases in which recovery for fraud is permitted require an entirely different evidentiary basis. The essence of the fraud being a misrepresentation of existing fact, the burden of proof requires the claim to establish by the evidence, a current intention by the promisor at the time the agreement is made not to perform. Failure of performance is insufficient to establish this intent or to shift the burden of proof.

> The availability of relief in fraud for misrepresentation of intention to perform an agreement therefore is measured not by abstract legal principles, but by the

nature and probative value of the evidence required to demonstrate the intention of the promisor not to perform at the time the assurance is given. *Dillard v. Earnhart*, 457 S.W.2d 666, 670 (Mo.1970); Sec. 530, Restatement of Torts, p. 70, Comment C. 506 S.W.2d at 465.

*Brennaman* has subsequently been cited with approval, both by appellate courts in Missouri; see *Klecker v. Sutton*, 523 S.W.2d 558, 561–62 (1975), and by federal courts dealing with questions of Missouri law. See, *Rowe International Inc., v. J–B Enterprises, Inc.*, 647 F.2d 830, 834 (8th Cir. 1981).

Thus it is apparent that Missouri law does not absolutely bar claims of fraudulent misrepresentation which rest upon a knowing misrepresentation of an intention to perform some act. Rather, Missouri cases distinguish between mere promises and knowing misrepresentations of one's intentions. The fact that a party makes a promise which it subsequently fails to perform does not, under Missouri law, establish a prima facie case of fraudulent misrepresentation. Such statements only become fraudulent when an additional element is present—an intent concurrent with the making of the commitment to dishonor that commitment. Therefore, under both Missouri and Pennsylvania law it is the coupling of a promise with an intent to disavow that promise which forms the foundation of a claim of fraudulent misrepresentation.

Equally important for our purposes is the fact that Missouri law recognizes that the distinction between a broken promise and a misrepresentation turns on the facts attending the individual case. See, *Brennaman*, 506 S.W.2d at 645. Thus, resolution of this issue requires the development of a full factual record. It is therefore not a question which can appropriately be resolved by this court as a matter of law.

Finally in Count V of his complaint the plaintiff alleges that Logan tortiously interfered with his contractual relationship with United. Logan now challenges this count of the complaint, arguing that the actions

taken by him with respect to DuSesoi's employment were privileged and do not provide a basis for liability in tort.

■ The privilege asserted by Logan in this case is a privilege which inures to the officers and directors of a corporation. These individuals, by virtue of their corporate offices, are permitted to take actions which have the effect of interfering with contractual relations between the corporation and third parties.

The privilege rests on two basic principles. First, it recognizes that a corporation cannot tortiously interfere with an agreement to which it is a party. Rather, this tort is defined exclusively in terms of interference by some third party. Restatement (Second) of Torts § 766. In addition, this privilege acknowledges that a corporation, as a legal entity, acts only through the actions of its officers and agents. Therefore when corporate officers terminate an agreement on behalf of their principal, the corporation, their actions are not considered tortious.

Both Pennsylvania and Texas law recognize the existence of this privilege; moreover, in both states the availability of this defense has been determined as a matter of law. *Southwestern States O & G Co. v. Sovereign Resources*, 365 S.W.2d 417 (Tex. Civ.App.1963) (Affirming summary judgment dismissal of complaint against an officer and director); *Terry v. Zachry*, 272 S.W.2d 157 (Tex.Civ.App.1954), (Affirming summary judgment dismissal); *Menefee v. Columbia Broadcasting System, Inc.*, 458 Pa. 46, 329 A.2d 216 (1974), (Affirming summary judgment for general manager and director of plaintiff's employer); *Geib v. Alan Wood Steel Co.*, 419 F.Supp. 1205 (E.D.Pa.1976), (Summary judgment granted in favor of the President of the parent corporation of the plaintiff's employer).

In this case it is undisputed that the defendant, Harry Logan, was the president of both United and International throughout the entire period of plaintiff's employment. (Affidavit of Harry Logan, paragraph 2; Paragraph 8 of the plaintiff's complaint). Logan was also the Chairman of the Board of Directors of International at this time. (Exhibit 2(c), Defendant's Motion for Summary Judgment). Thus, Logan's positions with both United and International would bring him within the scope of this privilege.

Logan has, by affidavit, described the circumstances surrounding DuSesoi's discharge. The plaintiff's employment was terminated as a result of the acquisition of United by Coral Energy, Inc. Coral already maintained a large crude oil trading department in Houston. Therefore, Coral had no need for the services provided by DuSesoi and International. Accordingly, Coral decided to terminate DuSesoi's employment. (Affidavit of Harry Logan, paragraph 7).

■ On this record we believe that Count V of the plaintiff's complaint should be dismissed. Logan was an officer in both United and International throughout the period covered by this lawsuit. In these corporate capacities Logan ordered the termination of International's operations and the discharge of DuSesoi. In taking these steps Logan was acting on behalf of and at the direction of his corporate principal. Therefore, Logan's actions in no way provide a basis for individual liability in tort.

■ The plaintiff in this case cannot simply rely on the legal conclusion, asserted in his complaint, that Logan's actions were not privileged. (Paragraph 42 of the plaintiff's complaint). Rather he must come forward with some evidence indicating the existence of a genuine issue of fact of this question. This he has failed to do. Accordingly Count V of plaintiff's complaint must be dismissed.