**MELLON BANK CORPORATION and Mellon Bank, N.A., Plaintiffs,**

v.

**FIRST UNION REAL ESTATE EQUITY AND MORTGAGE INVESTMENTS, Defendant.**

**Civ. A. No. 88–0775.**

United States District Court, W.D. Pennsylvania.

Sept. 28, 1990.

Paul A. Manion, Pittsburgh, Pa., for plaintiffs.

Kenneth S. Mroz, Pittsburgh, Pa., and James T. Crowley, Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

D. BROOKS SMITH, District Judge.

This case arises out of a series of transactions between First Union Real Estate Equity and Mortgage Investments (hereinafter First Union), an Ohio real estate trust, and Mellon Bank (hereinafter Mellon). In the fall of 1981, Mellon was badly in need of space for expanded office facilities, and approached First Union to explore the possibility of acquiring from it One

Oliver Plaza, a building in downtown Pittsburgh.

The parties began negotiating for a mutually agreeable sale price, and these efforts continued for several months. The greatest obstacle was not, however, the sale price. Instead, the parties had difficulty agreeing on the structuring of Mellon's payment for the building. Mellon preferred to purchase the property with cash, thereby avoiding the payment of interest on a loan. Barnes Deposition at 21. First Union, on the other hand, would not consent to a cash sale because of the tax ramifications to it. Schofield Deposition at 70. Indeed, Donald Schofield, the President of First Union, insisted that the transaction be structured to be tax free for First Union. Accordingly, he proposed that Mellon purchase the property through an installment sale. Mellon hesitated because of the attendant interest charges. Schofield then offered to give Mellon mortgages on two of its mall properties to offset the cost of the interest of the installment sale of One Oliver Plaza. Mellon accepted this arrangement and the parties began to draft the appropriate documents.

The transaction was further complicated by Schofield's insistence that the transactions, the sale of One Oliver Plaza and the mall mortgages, appear independent of each other. According to Mellon, Schofield insisted on the appearance of independence to lessen the likelihood of I.R.S. scrutiny. See Knight Deposition at 25–26; Montgomery Deposition at 37–38. To facilitate the appearance of independence, the parties agreed that the mall mortgages and the One Oliver Plaza deal would close in different years. The loan documents also contained different provisions regarding the parties' right to prepay the loans. The mall mortgages specifically provided for prepayment, whereas the One Oliver Plaza note expressly prohibited prepayment. Mellon claims that, notwithstanding the contractual language to the contrary, Scho-

field promised that he would not prepay the mall mortgages, or if he did exercise his right to prepay, he "would not hurt [Mellon]." See Knight Deposition at 32.

The mall mortgages closed on March 2, 1982, and the mortgage on One Oliver Plaza closed on May 13, 1983. On August 31, 1983, Schofield informed Mellon that First Union would exercise its right to prepay the mall mortgages as provided in the loan documents.

Mellon protested First Union's decision to prepay and reminded First Union of the alleged oral agreement. See Montgomery Deposition at 96; Schofield Deposition at 300–301. First Union denied making any such agreement and prepaid the mall mortgages in accordance with the written agreements. Mellon took no further action until September of 1986, when it approached First Union with a proposal to prepay the One Oliver Plaza note. First Union refused to accept prepayment and refused to make alternative arrangements to buffer Mellon's loss on the interest payments.

As a result, Mellon filed this suit against First Union alleging six breach of contract counts and one count of fraudulent misrepresentation. The case is now before us on First Union's motion for summary judgment. First Union claims it is entitled to summary judgment on the contract counts because the parol evidence rule bars the introduction of evidence concerning the alleged oral agreement. First Union further claims that it is entitled to summary judgment on the fraud count simply because Mellon cannot produce any evidence of fraud sufficient to overcome this motion for summary judgment.[1] We agree, and for the reasons set forth below, grant First Union's motion.

Rule 56 allows a party to move for summary judgment upon a showing that there is no genuine issue of material fact or that it is entitled to judgment as a matter of

---

1. First Union alleged several other grounds for summary judgment in its brief to this Court. Specifically, First Union claimed that Mellon lacked standing to prosecute this suit, that Mellon failed to file this suit in a timely fashion, and that Mellon failed to join a necessary and indispensable party, One Oliver Plaza Associates, pursuant to Fed.R.Civ.P. 19. None of these contentions warrant discussion.

law. Although we view the evidence in the light most favorable to the non-moving party, *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983), the nonmoving party has the burden of showing that there is a genuine dispute regarding an issue of material fact. The nonmoving party must produce more than a mere scintilla of evidence to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 262, 106 S.Ct. 2505, 2517, 91 L.Ed.2d 202 (1986). Indeed, the nonmoving party must produce evidence upon which the jury could reasonably find for the plaintiff. *Id.* Mellon cannot meet this burden.

## I. THE CONTRACT CLAIMS

■ The Pennsylvania courts steadfastly adhere to the parol evidence rule which forbids "the introduction of parol evidence of antecedent or contemporaneous agreements, negotiations and understandings of the contracting parties for the purpose of varying or contradicting the terms of a contract which both parties intended to represent the definite and complete statement of their agreement." *American Bank & Trust Co. of Pennsylvania v. Lied*, 487 Pa. 333, 409 A.2d 377, 381 (1979). *See also McWilliams v. McCabe*, 406 Pa. 644, 179 A.2d 222, 228 (1962). *In re Furjanick's Estate*, 375 Pa. 484, 100 A.2d 85, 89 (1953).

■ Whether a writing is the complete statement of the agreement is to be determined by examining the writing itself, and if "it is couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking were reduced to writing." *Gianni v. Russell & Co.*, 281 Pa. 320, 126 A. 791, 792 (1924). Thus, the question of integration is one for the court to decide by reference to the four corners of the agreement. *Federal Deposit Ins. Co. v. Barness*, 484 F.Supp. 1134, 1146 (W.D.Pa.1980). *See also Mellon Bank, N.A. v. Aetna Business Credit*, 619 F.2d 1001, 1010 n. 9 (3d Cir.1980). The agreement in the instant case was reduced to three separate, formal agreements which identified the property involved, the purchase price and the terms of repayment. Accordingly, we find that the writings were integrated and that therefore, the parol evidence rule is applicable.

Mellon attempts to avoid the consequences of the parol evidence rule by arguing that the instant case falls within two well recognized exceptions to that rule. Mellon first claims that the oral agreement was somehow separate and distinct from the written agreement, thereby making the parol evidence rule inapplicable. Next, Mellon contends that it was induced to agree to the written provisions of the note by Schofield's fraudulent misrepresentations regarding his intent to honor the prepayment provisions of the mortgage notes. Both of these contentions are without merit.

### A. *The Separate Agreement Theory*

■ It is well recognized that the parol evidence rule does not bar evidence of oral agreements that are separate from the written agreement. *See Wood v. R.R. Donnelley & Sons*, 888 F.2d 313 (3d Cir. 1989). An oral agreement, however, is not considered a separate agreement unless it concerns a separate subject and is supported by independent consideration. *See Wood v. R.R. Donnelley & Sons*, 888 F.2d at 317–18; *Cohn v. McGurk*, 330 Pa.Super. 333, 479 A.2d 578 (1984), *Kravitz v. Mudry*, 200 Pa.Super. 240, 189 A.2d 311 (1963). The facts of the instant case preclude Mellon from availing itself of this exception. The oral agreement in the instant case concerned a material term of the contract that was expressly provided for in the writing. Thus, the oral agreement did not concern a collateral matter, but went to the heart of the transaction governed by the writing. Moreover, there was absolutely no independent consideration for the oral agreement. Both the facts of this case and counsel's statement at oral argument belie any attempt to characterize the oral agreement as separate from the writing. Indeed, at oral argument, counsel for Mellon stated that, but for the oral agreement that Schofield would "protect" Mellon, Mellon would

not have entered into the transaction. Thus, it is impossible to find that the oral agreement was in any manner independent from the writings.

Moreover, the cases upon which Mellon relies for support of its theory of a separate agreement are easily distinguished from the matter at hand. Indeed, a brief review of these cases will demonstrate the weakness of Mellon's position.

*Cohn v. McGurk, supra,* is similar to the instant case in that it involved a dispute over an obligation on a mortgage. That, however, is where the similarities end. In *Cohn,* the McGurks were named guardians of the children of Margaret Grekowicz. In her will, Grekowicz directed that her estate provide the McGurks with enough money to purchase a home for her children. When the mortgage on the new house was closed, Cohn, the personal representative of Grekowicz's estate, told the McGurks that they would have to sign a mortgage on the new house in favor of the estate or the money required to purchase the house would not be forthcoming. Thus, the McGurks had a choice between signing the mortgage in favor of the estate or losing the $20,000.00 they had already deposited as a down payment. The McGurks chose to sign the mortgage. However, prior to the closing, Cohn had given McGurk assurances that the estate would provide funds sufficient for purchasing the house. The court found that the oral agreement was entirely separate from the written mortgage. 479 A.2d at 582. The oral agreement was supported by independent consideration in the form of the McGurk's agreement to care for the decedent's children. *Id.* Moreover, the court further found that the parol evidence would be admissible regarding the mortgage to the estate because the McGurks signed the mortgage under duress. *Id.* at 583. The court found the prospect of losing the $20,000.00 down payment sufficient duress to overcome the strictures of the parol evidence rule. Clearly, *Cohn* is inapposite.

*Wood v. R.R. Donnelley & Sons, supra,* is similarly distinguishable. That case involved several separate agreements, only one of which was reduced to writing. Wood had directed his bank, which was not a party to the lawsuit, to issue an irrevocable letter of credit on his behalf to Donnelley. This letter of credit was, of course, in writing. Wood and Donnelley, however, had a separate oral understanding concerning the conditions precedent which would allow Donnelley to demand performance on the letter of credit. Donnelley claimed that the letter of credit was a writing within the meaning of the parol evidence rule which prevented Wood from introducing any evidence regarding their oral agreement. Our Court of Appeals disagreed, finding that the letter of credit governed only the obligations between the bank and Wood. The court further found that the letter of credit did not concern the conditions precedent which would allow Donnelley to demand payment through the letter of credit. Accordingly, the Court found that the oral agreement was a totally separate contract on an independent subject, supported by independent consideration. *Id.* at 318.

Unlike the plaintiffs in *Wood* and *Cohn,* Mellon cannot show that its oral agreement concerned a subject separate from the written contract. Nor can Mellon show that the oral agreement was supported by independent consideration. Therefore, the collateral agreement exception to the parol evidence rule is inapplicable in the instant case.

### B. *The Fraud Exception*

 Mellon next claims that the parol evidence rule should not be applied in this case because the contract was obtained through fraud. Although it is true that the parol evidence rule does not bar evidence that a contract was obtained through fraud, Mellon cannot avail itself of this exception to the rule.

 The Pennsylvania courts have repeatedly held that a mere breach of good faith or a broken promise to do or refrain from doing something *in the future* is not the kind of "fraud that will admit parol testimony to vary the terms of a written contract." *Sokoloff v. Strick,* 404 Pa. 343, 172 A.2d 302, 305 (1961); *Wood v. R.R. Donnelley & Sons Co.,* 888 F.2d at 318–19.

Thus, to defeat First Union's motion for summary judgment, Mellon would have to produce evidence from which a jury could reasonably find that Schofield *intended* to prepay the mall mortgages at the time they were closed in March of 1982. Even when the evidence is viewed in the light most favorable to Mellon, it is apparent that Mellon has failed to meet this burden.

In *Betz Laboratories, Inc. v. Hines,* 647 F.2d 402 (3d Cir.1981), Judge Weis, writing for the court, discussed at length the relationship between the parol evidence rule and allegations of fraud. He declared that "[i]t is arguably incorrect to say that fraud is an exception to the parol evidence rule ..." because such fraud establishes that there is no contract, which in turn obviates any need to respect the written contract. *Id.* at 406. Thus, an allegation of fraud allows the introduction of parol evidence, not to vary the terms of the contract, but to vitiate the contract entirely.

To avail itself of the fraud exception to the parol evidence rule, Mellon would need to produce some evidence that Schofield had misrepresented his intent at the beginning of the transaction. Thus, Mellon would need to show that Schofield (1) intended to prepay the mortgages and (2) intended to refuse to make alternative arrangements to "protect" Mellon before any of the mortgages closed. This would demonstrate Schofield possessed the intent to deceive Mellon and fraudulently induce it to enter the agreement from the very beginning of the transaction. If Mellon, for example, could produce notes or statements made by Schofield before any mortgages closed from which it could be inferred that he planned to prepay the mall mortgages without making "protective" arrangements for Mellon, then Mellon might be able to avail itself of the fraud exception to the parol evidence rule. The record, however, is utterly devoid of such evidence. Instead, the record and the evidence upon which Mellon must rely, demonstrates that Schofield did not decide to prepay the mall notes until well after the transaction was under way.

To meet its burden, Mellon relies solely upon the deposition testimony and notes of Donald Schofield. Although Schofield admits (and his notes corroborate) that he was considering prepayment in February of 1983, that is almost a full year after the first part of the transaction was closed. *See* Schofield deposition at 267–69; Plaintiff's Exhibit D at p. 8. Moreover, the reason Schofield gives for his eventual decision to prepay—namely a decline in interest rates—refutes Mellon's claim that Schofield misrepresented his intentions at the beginning of the transaction.

Mellon's argument is, however, dealt a fatal blow by the vague nature of the alleged oral promise. According to Mellon, Schofield's alleged oral promise was alternative in nature: either he would not prepay, or if he did he would not "hurt" Mellon. *See* Knight Deposition at 36–37. To avoid a potential statute of limitations problem, Mellon identifies the time of breach not at the moment of prepayment, but when Schofield refused to make alternative arrangements to prevent Mellon from losing money on the interest charges on One Oliver Plaza. If this was the moment of breach, as Mellon claims, it did not occur until 1986, more than four years after the mall mortgages closed and three years after the Oliver Plaza deal closed. Thus, even if Mellon could show, which it cannot, that Schofield intended to prepay before entering the transaction, its claim would still fail because Mellon has identified Schofield's refusal to "protect" Mellon as the time of the breach, and yet has introduced absolutely no evidence regarding when Schofield made the decision to refuse Mellon's attempt to prepay the note. It is therefore impossible for Mellon to produce any evidence that Schofield intended not to "protect" Mellon at the beginning of the transaction. Thus, Mellon cannot rely on the fraud exception to the parol evidence rule.

## II. THE FRAUD COUNT

■ The parol evidence rule does not impact Mellon's final count which is based on a tort theory of fraudulent misrepresentation. However, even without this ob-

stacle Mellon has failed to produce evidence sufficient to create a genuine issue of material fact. Accordingly, First Union is entitled to summary judgment on the fraud count as well.

The elements of fraud, according to Pennsylvania law, are "(1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as a proximate result." *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa. Super. 90, 464 A.2d 1243, 1252 (1983) quoting *Scaife Co. v. Rockwell–Standard Corp.*, 446 Pa. 280, 285, 285 A.2d 451, 454, *cert. denied*, 407 U.S. 920, 92 S.Ct. 2459, 32 L.Ed.2d 806 (1971). Moreover, each element must be proved by "evidence that is clear, precise, and convincing." *Delahanty*, 464 A.2d at 1252. (citations omitted). Indeed, a "judge must decide as a matter of law before he submits a case to a jury whether the plaintiff's evidence attempting to prove fraud is sufficiently clear, precise and convincing to make out a prima facie case." *Beardshall v. Minuteman Press International, Inc.*, 664 F.2d 23, 26 (3d Cir.1981). Thus, "whether the evidence is true is a question of fact ... but whether it meets the required standard which justifies submission to the jury is always a question of law." *Id.* (citations omitted).

Mellon simply cannot make this showing. First, Mellon is once again plagued by its inability to prove that Schofield acted fraudulently when he made the alleged promise "not to hurt Mellon." Mellon relies on a lengthy passage in the *Delahanty* case in which (now President) Judge Cirillo gives an exhaustive definition of what actions may constitute fraud under Pennsylvania law. Mellon correctly argues that the definition is extremely broad. The breadth of this definition, however, does not contradict other cases which very clearly hold that a broken promise to do or refrain from doing something in the future is not fraud. *See First Pennsylvania Banking & Trust Co. v. McNally*, 200 Pa. Super. 196, 188 A.2d 851 (1963); *Com. v. Kelinson*, 199 Pa.Super. 135, 184 A.2d 374

(1962); *M. Leff Radio Parts, Inc. v. Mattel, Inc.*, 706 F.Supp. 387 (W.D.Pa.1988) (Video game distributor could not prevail on a claim of fraud where manufacturer sent correspondence stating that rumors regarding manufacturer's intent to abandon the business were false three months before abandoning business, where distributor failed to demonstrate the decision was made prior to the correspondence); *Proie Bros., Inc. v. Proie*, 301 F.Supp. 680, *aff'd* 414 F.2d 1365 (3d. Cir.1968).

It is just as clear, however, that "a statement of present intention which is false when uttered may constitute a fraudulent misrepresentation of fact." *DuSesoi v. United Refining Co.*, 540 F.Supp. 1260, 1273 (W.D.Pa.1982) quoting *Brentwater Homes, Inc. v. Weibly*, 471 Pa. 17, 369 A.2d 1172, 1175 (1977). Thus, if Mellon could show that Schofield misrepresented his present state of mind when he entered into the transaction, this would constitute one element of actionable fraud. However, as discussed above, Mellon has not produced a scintilla of evidence to demonstrate that Schofield misstated his present intent at the beginning of the transaction. Instead, Mellon relies upon evidence of Schofield's intent and of his actions *after* the transaction was undertaken. This evidence, however, is not sufficient to show that Schofield misrepresented his state of mind at the beginning of the transaction. Mellon's inability to prove that Schofield did not intend to "protect" Mellon from the beginning of the transaction is as fatal to the fraud count as it was to the contract counts.

■ This, however, is not the only flaw in Mellon's argument. To avoid summary judgment, Mellon must produce sufficient evidence from which a reasonable jury could find that Mellon's reliance on Schofield's alleged oral promise was justified. *See Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d at 1252. *DuSesoi v. United Refining Co.*, 540 F.Supp. 1260 (W.D.Pa.1982). This Mellon cannot do.

Mellon claims that it entered into a 48 million dollar transaction in reliance on

Schofield's alleged oral promise "not to hurt Mellon." Mellon claims that this meant First Union would either refrain from prepaying the mall mortgages or allow Mellon to prepay its mortgage on One Oliver Plaza, or provide Mellon with some other security notwithstanding the written contractual provisions to the contrary.[2] Mellon's reliance on this vague oral promise is wholly unjustified.

First, Mellon Bank is a very large commercial entity. Its officers are individuals with considerable business sophistication. As such, Mellon's officers, who consulted with legal counsel at various critical stages in this transaction, should have been fully aware of the binding impact of a writing. The writing itself expressly allowed First Union to prepay the mall mortgages and expressly prohibited Mellon from prepaying its own mortgage on Oliver Plaza. Thus, the parties' rights were clearly delineated in the writing. Mellon, however, claims that it relied on Schofield's vague promise "not to hurt" Mellon. In other words, Mellon relied upon a vague and casual oral promise to alter the express and unequivocal terms of subsequent writings. Moreover, Mellon knew that Schofield himself was a very sophisticated businessman, also aware of the impact of a writing. Given the sophistication of the parties, the complicated nature of the transaction, and the considerable amount of money involved, Mellon would have been wholly unjustified in relying on such a vague oral promise by Schofield to alter the terms of the written agreements. *See generally, Josephs v. Pizza Hut,* 733 F.Supp. 222, 227 (W.D.Pa.1989) *aff'd mem.* 899 F.2d 1217 (3d Cir.1990) (It is not reasonable for experienced business people to make business decisions based on oral representations in contravention of written statements).

Moreover, according to Edward Montgomery, Jr., who was the head of Mellon's real estate department at the time of the transaction, Schofield told Mellon at the outset that he might want to prepay the mall mortgages. Montgomery Deposition at 38, 43–45. Thus, assuming *arguendo,* that a promise was made, it was unreasonable for Mellon to expect such a promise to be kept in light of the writing to the contrary and Schofield's open discussion of the possibility that he might avail himself of the right to prepay.

Therefore, we find that Mellon has utterly failed to produce evidence sufficient to establish two of the elements of a prima facie case of fraud. Mellon cannot demonstrate that Schofield possessed a fraudulent intent at the beginning of the transaction. Nor can it show that its reliance on the alleged oral promise was reasonable. First Union is therefore entitled to summary judgment on the fraud count.

An appropriate order will be entered.

---

**2.** The only evidence of what Schofield's promise "not to hurt Mellon" entailed is speculation by Mellon's officers. The record contains no evidence of what Schofield actually meant, if in fact these words were uttered. Instead, Mellon's only evidence regarding the content of the promise is the interpretation ascribed to the words by Mellon's own employees and the various proposals that Mellon would find satisfactory in the event of prepayment. Montgomery Deposition at 46–48. Knight Deposition at 34–35.