518 A.2d 1291

**MERCEDE CENTER, INC.**

v.

**EQUIBANK, David F. Cook and Caribank.**

**Appeal of MERCEDE CENTER, INC. and Caribank.**

Superior Court of Pennsylvania.

Argued May 1, 1986.

Filed Dec. 18, 1986.

James A. Ashton, Pittsburgh, for appellants.

John R. O'Keefe, Jr., Pittsburgh, appellees.

Before DEL SOLE, MONTEMURO and POPOVICH, JJ.

DEL SOLE, Judge:

Mercede Center Inc. (Mercede), a Florida corporation engaged in real estate development, sought a construction and permanent mortgage loan from Equibank in the amount of $12,500,000. Equibank issued a commitment letter subject to numerous terms and conditions including a request for various items of collateral security. One item of security to

be an unconditional, irrevocable letter of credit issued by a financial institution naming Equibank as beneficiary in the amount of $1,000,000. Mercede obtained a letter of credit from Caribank which was delivered to Equibank when the construction loan agreement was closed. The agreement provided *inter alia* that upon the occurrence of specified events of default and after notice and opportunity to cure, Equibank could declare Mercede to be in default and exercise remedies including but not limited to an immediate draw under the letter of credit.

Equibank subsequently declared Mercede to be in default. Thereafter, Mercede initiated an action requesting: a) Equibank and Caribank be temporarily enjoined from drawing down or accepting any draft on the letter of credit, b) the court declare null and void any attempted default unreasonably created by Equibank and c) that the court enjoin Equibank to keep its mortgage loan agreement. In addition, Mercede filed a petition for a rule to show cause why a preliminary injunction should not issue. After several continuances of the date for hearing on the petition, the court entered an order stating that upon motion of Mercede, the motion for preliminary injunction was withdrawn. Thereafter, Equibank sought to draw on the letter of credit resulting in Equibank's filing a cross-claim against Caribank for wrongful dishonor of its draft. Caribank, in response, filed a petition for interpleader. The trial court opinion in the case *sub judice* indicates that no disposition has been made of the interpleader petition but by order of court, $919,485.02 was deposited by Caribank with the Prothonotary of Allegheny County to be placed in an escrow account. Equibank then filed a Motion for Summary Judgment against Caribank on its cross-claim for wrongful dishonor and on May 8, 1985 the court entered an order granting Equibank's Motion and further ordered the Prothonotary to pay the funds held in escrow to Equibank in satisfaction of the judgment. The joint Motion of Mercede and Caribank to reconsider the entry of Summary Judgment and vacate the order was denied and an appeal from the May 8, 1985 order was filed by Mercede and Caribank.

Thereafter, on July 9, 1985, the trial court granted the petition of Equibank for leave to amend its answer and reply to new matter in the nature of a cross-claim and new matter in the nature of a cross-claim and counterclaim. The amended pleadings asserted *inter alia* claims for wrongful dishonor by Caribank of subsequent drafts on the letter of credit on February 25, 1985, April 2, 1985 and May 20, 1985 totaling $67,755.27. Caribank filed its answer which was followed by Equibank filing a Motion for Summary Judgment on the amended pleadings. The Motion asserted Equibank was entitled to judgment against Caribank for wrongful dishonor of the subsequent drafts as a matter of law based on the May 8, 1985 Order of Court. The trial court on February 19, 1986 entered an Order granting the Motion and a notice of appeal was subsequently filed on March 18, 1986.

We have consolidated for disposition the appeals of Mercede and Caribank from the two Orders of the Court of Common Pleas of Allegheny County granting Equibank's Motions for Summary Judgment.[1]

In the pleadings and affidavits Mercede and Caribank have contended "that the credit contract between Equibank and Caribank was expressly conditional upon Equibank's good faith performance of its obligations under the loan agreement, and that the credit could only be drawn on in the event of a default by Mercede Center after completion of the construction phase of the project by reason of rents being insufficient to meet permanent mortgage payments." (Trial Court Opinion at 4 in support of the May 8, 1985 Order). Because Equibank has attempted to draw on the letter of credit prior to completion of the construction phase, Mercede and Caribank have raised the issue of

---

1. Pa.R.App.P. 513 provides:
   Consolidation of Multiple Appeals
      Where there is more than one appeal from the same order, or where the same question is involved in two or more appeals in different cases, the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal. Appeals may be consolidated by stipulation of the parties to the several appeals.

Equibank's alleged fraud in the inducement. Whether the letter of credit was fraudulently procured is said to raise an issue of fact, and therefore, the court is said to have erred in granting Equibank's Motion for Summary Judgment.

Pa.R.C.P. 1035(b) provides that summary judgment may be entered: 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law'. In considering a motion for summary judgment the court must view the evidence in the light most favorable to the non-moving party and enter judgment only if the case is clear and free from doubt.

*Lucera v. Johns-Manville Corp.*, 354 Pa.Super. 520, 528, 512 A.2d 661, 665 (1986).

The letter of credit in this matter reads as follows: [b]y order of Mercede Center, Inc. of Plantation, Florida, and for account of the same, we hereby establish our Irrevocable Letter of Credit and authorize you to draw on us up to One Million Dollars ($1,000,000.00), available by your draft at sight.

This credit has been established in your favor to support your combination construction and permanent mortgage loan to Mercede Center, Inc. Your draft must be drawn and negotiated no later than July 27, 1986 and must bear our Letter of Credit # 307 and date.

We hereby agree with the drawers, endorsers, and bona fide holders of all drafts drawn under and in compliance with the terms of this credit, that such drafts will be duly honored upon presentation to the drawee.

This credit is subject to the "Uniform Customs and Practices for Documentary Credits" (1974 Revision), International Chamber of Commerce Brochure No. 290.

Our Supreme Court has stated that:

[t]he great utility of letters of credit flows from the independence of the issuer-bank's engagement from the underlying contract between beneficiary and customer.

Long-standing case law has established that, unless otherwise agreed, the issuer deals only in documents. If the documents presented conform to the requirements of the credit, the issuer may and must honor demands for payment, regardless of whether the goods conform to the underlying contract between beneficiary and customer. Absent its agreement to the contrary, the issuer is, under the general rule, not required or even permitted to go behind the documents to determine if the beneficiary has performed in conformity with the underlying contract.

*Intraworld Industries Inc. v. Girard Trust Bank*, 461 Pa. 343, 357, 336 A.2d 316, 323 (1975). The Court in *Intraworld* has stated the general rule which is codified at 13 Pa.C.S.A. § 5114(a) as follows:

[a]n issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for the sale or other contract between the customer and the beneficiary. The issuer is not excused from honor of such a draft or demand by reason of an additional term that all documents must be satisfactory to the issuer, but an issuer may require that specified documents must be satisfactory to it.

13 Pa.C.S.A. § 5114(b) implicates the exceptions to the general rule set forth in *Intraworld*.[2]

**2.** Professors White and Summers note:
[S]ubsection [ (b)(1) ] does not explicitly state exceptions excusing the issuer from honor. Rather it states exceptions by way of negative implication. Thus it would appear by way of implication ... that, as against the beneficiary, the issuer may, even though the documents appear on their face to comply, lawfully refuse honor (but is not required to do so), if (1) the documents do not in fact conform to the warranties made on negotiation or transfer of a document of title ... or of a security ..., or (2) the documents are in fact forged or fraudulent, or (3) there is in fact "fraud in the transaction", provided that the party presenting the draft or demand for payment is the beneficiary or some other party who is not (a) a holder in due course ..., (b) a person to whom a document of title has been duly negotiated ..., or (c) a bona fide purchaser of a security....
It follows that *although the documents appear on their face to comply*, whenever any one of the foregoing three exceptions is

(b) Nonconforming document or fraud.   Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title (section 7507) or of a security (section 8306) or is forged or fraudulent or there is fraud in the transaction:

(1) the issuer must honor the draft or demand for payment if honor is demanded by a negotiating bank or other holder of the draft or demand which has taken the draft or demand under the credit and under circumstances which would make it a holder in due course (section 3302) and in an appropriate case would make it a person to whom a document of title has been duly negotiated (section 7502) or a bona fide purchaser of a security (section 8302); and

(2) in all other cases as against its customer, an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor.

13 Pa.C.S.A. § 5114(b).

Professors White and Summers have observed:

[i]t might be thought that a beneficiary's action for wrongful dishonor can always be decided on the pleadings on motion for summary judgment, or the like, for the question is whether the issuer wrongfully dishonored, and the terms of the credit and all documents presented by the beneficiary will be before the court.   Often this will be true.   But sometimes it will not be, for genuine issues of fact may arise with respect to waiver, estoppel, cure, and the like. *Also, ... trial may be required when*

applicable, the issuer is not obligated to honor ... and may refuse to honor even if not enjoined from honor.   If sued by the beneficiary, the issuer may set forth the appropriate exception as a defense.

White & Summers, Uniform Commercial Code § 18–6 (2d ed. 1980).

*the issuer sets up forgery or fraud defenses under 5–114(2).*

White & Summers, Uniform Commercial Code § 18–6 (2nd ed. 1980) (emphasis added).

While trial may indeed be required in certain instances when the issuer sets up a defense under 13 Pa.C.S.A. § 5114, it is not required in all cases. There may be situations where fraud is alleged but even if proven, would not entitle the issuer to dishonor. In this regard, the Court in *Intraworld* commenting upon conduct justifying a court enjoining honor under 13 Pa.C.S.A. § 5114 stated:

> [i]n light of the basic rule of the independence of the issuer's engagement and the importance of this rule to the effectuation of the purposes of the letter of credit, we think that the circumstances which will justify an injunction against honor must be narrowly limited to situations of fraud in which the wrongdoing of the beneficiary has so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served. A court of equity has the limited duty of
>
> > 'guaranteeing that [the beneficiary] not be allowed to take unconscientious advantage of the situation and run off with the plaintiff's money on a *pro forma* declaration which has absolutely no basis in fact.'

*Intraworld Industries, Inc. v. Girard Trust Bank,* 461 Pa. at 359, 336 A.2d at 324–25.

The relevant inquiry then becomes would the alleged wrongdoing of Equibank, if established, have so vitiated the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served. The Court in *Intraworld* provided the example of *Sztejn v. J. Henry Schroder Banking Corp.,* 177 Misc. 719, 31 N.Y.S.2d 631 (Sup.Ct.1941), as a situation wherein the fraud was such as to vitiate the entire transaction. In *Sztejn:*

> [t]he customer had contracted to purchase a quantity of bristles from the beneficiary and arranged to have the

issuer issue a letter of credit in favor of the beneficiary. The credit required that the draft be accompanied by an invoice an a bill of lading.

The beneficiary placed fifty cases of merchandise on a steamship and obtained a bill of lading describing the material as bristles. The beneficiary then drew a draft and presented it, along with the required documents, through a collecting bank. The customer's complaint alleged that the material shipped was not bristles as described in the documents, but rather "cowhair, other worthless material and rubbish [shipped] with intent to simulate genuine merchandise and defraud the plaintiff...."

*Intraworld Industries, Inc. v. Girard Trust Bank*, 461 Pa. at 360, 336 A.2d at 325.

■ The underlying transaction involved here is a $12,500,000 construction and permanent mortgage loan and the rights and obligations of the parties under the loan are not presently before us. In contrast to *Sztejn*, the fraud alleged here does not even involve the underlying transaction. The alleged fraud is said to have been in the procurement of the letter of credit itself. Therefore, even if proven, we are unable to say the alleged fraud could so vitiate the entire transaction that the legitimate purposes of the independence of the issuer's obligation would no longer be served. The trial court did not err when it entered the May 8, 1985 Order granting Equibank's Motion for Summary Judgment against Caribank on it's cross-claim for wrongful dishonor of its draft.

On appeal from the Order entered February 19, 1986, the issue of Equibank's alleged fraud in the inducement is again raised, this time with respect to the claimed wrongful dishonor by Caribank of Equibank's drafts on February 25, April 2, and May 20, 1985. We find the analysis set forth above to be dispositive of this issue.

■ It is additionally asserted that Equibank is collaterally estopped and barred by res judicata from asserting it's second motion for summary judgment:

[t]he doctrine of res judicata establishes that 'a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the parties or their privies, on the same cause of action'.... To establish the defense of res judicata, four elements must be shown: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued.

*A.C. Elfman & Sons, Inc., v. Clime,* 355 Pa.Super. 394, 397, 513 A.2d 488, 489, (1986). (citations omitted).

The term 'res judicata' is often sweepingly used, by courts and litigants alike, to refer to the various ways in which a judgment in one action will have a binding effect in a later action. 'Res judicata' encompasses the modern principle of issue preclusion (traditionally known as estoppel), which is the common law rule that a final judgment forecloses relitigation in a later action involving at least one of the original parties, of an issue of fact or law which was actually litigated and which was necessary to the original judgment.

*Clark v. Troutman,* 509 Pa. 336, 340, 502 A.2d 137, 139 (1985).

The general rule of issue preclusion provides:
[w]hen an issue of law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the same parties, whether on the same or a different claim. Restatement (Second) of Judgments § 27 (1982).

*Clark v. Troutman,* 509 Pa. at 340, 502 A.2d at 139.

The doctrine of res judicata affords Appellants no relief. The parties and their capacity are the same. Both suits are for wrongful dishonor of drafts on the same letter of credit. However, when Equibank filed its cross-claim for wrongful dishonor of its January 24, 1985 draft, on February 11, 1985, it could not have addressed the issue of dishonor of drafts which had not yet occurred. In *Whitt v. Philadel-*

*phia Housing Authority,* 325 Pa.Super. 135, 472 A.2d 684 (1984) we stated that:

[j]udgment for a single breach of an installment contract is not a bar to an action for a subsequent breach.... Similarly, where rent is paid on a monthly basis, a judgment for unpaid rent is not ordinarily a bar to an action to recover rent coming due and remaining unpaid thereafter.

*Id.,* 325 Pa.Superior Ct. at 43, 472 A.2d at 688.

■ Application of collateral estoppel will not inure to Appellant's benefit. The issue of Equibank's alleged fraud in the inducement as a justification for dishonor of drafts presented to Caribank on its letter of credit was decided adversely to Caribank by the Order of May 8, 1985.

Orders affirmed.