Albert J. WOOD, Appellant,

v.

**R.R. DONNELLEY & SONS COMPANY and Donnelley Receivables.**

No. 89–1292.

United States Court of Appeals,
Third Circuit.

Argued Aug. 8, 1989.

Decided Nov. 1, 1989.

Ira P. Tiger (argued), Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellant.

Thomas P. Preston (argued), Duane, Morris & Heckscher, Wilmington, Del., for appellees.

Before SLOVITER and GREENBERG, Circuit Judges, and FISHER, District Judge.*

**OPINION OF THE COURT**

CLARKSON S. FISHER, District Judge:

Before us is an appeal from an order granting summary judgment against appellant's diversity suit for fraud. Because our

---

* Honorable Clarkson S. Fisher, United States District Judge for the District of New Jersey, sitting by designation.

review is plenary, we address the record and the issues in the same manner as would a district court when ruling on a summary judgment motion. *Ashenbaugh v. Crucible, Inc., 1975 Salaried Retirement Plan*, 854 F.2d 1516, 1522 (3d Cir. 1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3155, 104 L.Ed.2d 1019 (1989); *Bushman v. Halm*, 798 F.2d 651, 656 (3d Cir.1986). For the reasons discussed below, we have concluded that the lower court incorrectly granted summary judgment. We will reverse and remand.

## I.

### The Transaction at Issue

Appellant, Albert J. Wood, is a retired businessman. In the summer of 1987 he was approached by Cahill Magee, President of Impirex International, Ltd. ("Impirex"). Impirex wanted Wood's financial backing in order to print Welcome magazine, a publication designed to commemorate the visit of His Holiness John Paul II to the United States in September of 1987. Proceeds from the magazine's sale were to be divided between printing costs and various charitable organizations.

Impirex also negotiated with R.R. Donnelley & Sons Company ("Donnelley & Sons"), in order to print Welcome contemporaneously with the Pope's visit. Impirex envisioned a print run of 1.3 million copies, and Donnelley & Sons estimated the cost of printing at $547,000. Because Donnelley & Sons did not wish to rely on sales for its payment, it asked to be made the beneficiary of standby letters of credit. Two letters of credit were eventually issued in Donnelley & Sons' favor. The first, for $110,000, was made on behalf of Owen Traynor, a California businessman. The second, for $80,000, was posted by Wood

through Continental Bank, N.A. ("Continental").

Wood testified [1] that Donnelley & Sons had told him that Welcome would not be printed until the company had been made the beneficiary of three letters of credit. Under this alleged promise, one letter was to be ordered by Traynor for $110,000. The second and third letters were to be ordered by Wood and a Dr. Rocco Martino for $80,000 each. Wood also said that he had been told the three letters would guarantee only the first $270,000 of Donnelley & Sons' costs and would be drawn upon *pro rata* to satisfy that amount.[2] Wood claimed that he had ordered the letter of credit on the basis of these alleged representations.

Donnelley & Sons asserted that it had never made the issuing of three letters a prerequisite for printing Welcome. Moreover, the company claimed that it had clearly told Wood that his $80,000 letter would be drawn upon to the extent necessary to cover all the printing costs. The printer's witnesses testified that Wood may have suggested the above scheme to Donnelley & Sons and others, but that the printer had clearly explained appellant's liability to him.

On August 4, 1987, Wood caused Continental to issue an "Irrevocable Stand–By Letter of Credit" for $80,000. The letter named Donnelley & Sons, "as Agents for Donnelley Receivables, Inc.," as the beneficiary. The letter also refers to Wood as an "Account Party." *Id.* The letter stated that it could be drawn down upon presentation of a signed statement that:

Payment[s] required under a certain Contract by and between R.R. Donnelley & Sons Company and Impirex International Ltd., Dublin, Ireland in connection with

1. The testimony referred to in this opinion was taken during proceedings in the Court of Common Pleas in Philadelphia prior to the removal of this action, which will be discussed in more detail *infra*.

2. Specifically, Wood explained his understanding of the agreement:
   *only the first $270,000* of . . . costs were to be guaranteed . . . [and that Donnelley & Sons

was] to divide the risk of any loss among all guarantors. To illustrate, if Triangle Publications, Inc. only collected $180,000 from the sale of the publication, there would then be a $90,000 shortfall and each of the . . . letters . . . would be drawn on . . . to the extent of $30,000.
Joint Appendix, p. 195a (emphasis original).

the printing of the Papal Souvenir Magazine has (have) not been received by Donnelley Receivables, Inc.

The document also contained an integration clause stating that it "set[ ] forth in full the terms of [the parties'] undertaking and such undertaking shall not be in any way modified, amended, or amplified" by collateral documents, agreements or representations.

When the time to print Welcome arrived, only Traynor and Wood had issued their letters of credit; Martino had not issued his own letter. Steven Korol, Senior Sales Representative of Donnelley & Sons' Magazine Group, testified about his discussions with Wood as the deadline approached:

> Mr. Wood and I had numerous conversations the day that we were ready to hit the press and actually almost rolling the paper up to press. I kept—told him, made it very clear that we still don't have [Dr. Martino's] letter of credit and Mr. Wood's response was "Come on, print the job, go ahead."

Korol also testified that Wood had not expressly approved of Donnelley & Sons' commencing printing without Martino's letter. Wood himself said he was "annoyed" and "disturbed" that Donnelley & Sons had printed Welcome without Martino's letter in hand.

The magazine had been printed and distributed by the end of October. On October 30, 1987, Wood's letter of credit was amended to expire on February 29, 1988. On February 11, Wood wrote Donnelley & Sons to explain his own understanding of his commitment. Wood also expressed his conclusion that Donnelley & Sons had reneged on its promise and his consequent determination to withdraw his financial support from Welcome.

Wood's letter was answered by Ruby Kerr, Donnelley & Sons' Corporate Credit Manager. In a letter from Kerr dated February 18, Kerr informed Wood that Donnelley & Sons considered Wood's commitment to be an irrevocable one for $80,000. Kerr acknowledged that Donnelley & Sons had printed Welcome without having been made the beneficiary of a letter of credit

from Martino. The doctor's failure to issue his letter, she concluded, "is [Donnelley & Sons'] misfortune, but it does not have any effect on the enforceability of the two letters of credit" already made out to the company by Wood and Traynor.

Kerr's letter also announced Donnelley & Sons' intention to draw on both letters no later than February 24. She offered each man "an extension of another 30 days, so long as it is understood that no conditions attach to [the company's] utilizing the letters of credit." Kerr notified both investors that any extensions were to be received by Donnelley & Sons no later than February 22, 1988.

On the same day Kerr wrote Wood, Traynor's attorney, Thomas Fournie, addressed a letter to Don Reeves, Donnelley & Sons' Senior Vice President of Magazine Sales. Fournie's letter purports to summarize an agreement reached through telephone conversations among himself, Wood and Reeves. Fournie summarized their agreement that Donnelley & Sons would refrain from drawing on Wood's and Traynor's letters until Welcome's sales revenues had been accounted for and until "the parties concerned have had an opportunity to review all the pertinent facts and fully discuss the situation." Fournie also wrote that the above "points of agreement" did not negate the existence of a "controversy as to Donnelley's rights to draw against these letters of credit." Fournie suggested that the extensions could be made by monthly amendment to the letters until the whole business had been straightened out.

Wood received and read both Fournie's and Kerr's letters. Some time after these exchanges Continental amended Wood's letter of credit to expire on April 29, 1988. The date on the amended letter of credit is February 22, 1988. The record also contains a letter from Wood to Bert MacKay, a Vice President of Continental Bank. This letter is dated February 24 and purports to confirm a "telephone conversation today asking you [MacKay] to please extend Wood's letter of credit to R.R. Donnelley for 60 days subject to Mr. Thomas A. Fournie's letter dated 1/18/88." Wood testified

that he had never signed the amendment to the letter of credit and asserted that the amendment may not actually have issued on February 22. February 24, the date of Wood's letter to Continental, is one day after the expiration of Kerr's deadline.

The record contains another letter by Fournie, addressed to Donnelley & Sons' general counsel and dated March 3, 1988. Fournie wrote to protest assertions in Donnelley & Sons' response to Fournie's February letter and stressed that "Messrs. Traynor and Wood were not waiving any rights by extending the letters of credit to protest Donnelley's entitlement to the funds," and that a dispute remained among all parties as to whether "the letters of credit ... were induced in the first place by Donnelley's concealment." Fournie reiterated his understanding that the parties had agreed to disagree while awaiting Welcome's final sales figures.

The magazine's sales tallies demonstrated that revenues were insufficient to cover Donnelley & Sons' actual printing cost of $564,697. On April 22, 1988, Donnelley & Sons presented a sight draft to Continental and requested that $80,000 be paid to Donnelley & Sons under the terms of Wood's letter. Five days later Wood sought injunctive relief in the Court of Common Pleas in Philadelphia.

## II.

### Proceedings Below

Wood's claim came on before the Hon. Sandra Mazer Moss of the Court of Common Pleas. Judge Moss denied Wood's request and explained her reasons:

> I ... cannot find irreparable harm.... I think the defendant is a solvent company. I think there is an action at law, and should there be a finding of fraud, a judgment can be paid and if that fraud is found and if it is found to be wilful and malicious, counsel fees and punitive dam-

ages will lie. Accordingly, that's the basis of my decision.

Continental Bank paid Donnelley & Sons $80,000 on May 2, 1988.

Wood then filed an amended complaint that dropped Continental and kept only Donnelley & Sons and Donnelley Receivables, Inc. as defendants. Count I of the amended complaint alleged that appellees had fraudulently induced Wood to cause Continental to issue the letter of credit. Count II demanded punitive damages and attorney's fees.

Appellees denied these claims and asserted that Wood's suit was barred by the doctrines of waiver, estoppel and consent. The reasoning behind these defenses was that Wood's agreement to the February extension had preserved his acceptance of appellees' irrevocable right to draw down on the sum. Finally, appellees argued that the complaint was "barred by the parol evidence rule," because Wood was attempting to alter the letter of credit's terms by "reference to any conversations or other communications between the parties."

Because Continental was dropped from the case, appellees properly removed the suit to the United States District Court for the Eastern District of Pennsylvania.[3] In September 1988 appellees moved for summary judgment on three grounds. Donnelley & Sons argued that (a) Wood's claims were governed by the parol evidence rule; (b) Wood could not successfully invoke Pennsylvania's narrow exception to that rule, and (c) even were Wood capable of doing so, his amendment to the letter signified his acceptance of Donnelley & Sons' unconditional right to draw down on the credit.

The district court entered summary judgment against Wood on March 30, 1989, holding that the letter had been properly drawn down according to its terms. Turning to Wood's fraud claim, the district

---

**3.** Continental was the only nondiverse defendant. After Wood amended his complaint the parties were Wood, a Pennsylvania citizen; Appellee R.R. Donnelley & Sons Company, a Delaware corporation with its principal place of business in Illinois, and appellee Donnelley Receivables, Inc., a Nevada corporation whose principal place of business is in Nevada. The claim exceeds the jurisdictional amount; therefore, removal was proper. 28 U.S.C. Section 1441(a).

court held that Wood complained of " 'a breach of faith or of an agreement regarding the doing or refraining from doing something in the future,' " which, under Pennsylvania law, cannot support an attack on a written contract. (quoting *Sokoloff v. Strick*, 404 Pa. 343, 348, 172 A.2d 302 (1961)). The district court further noted that Wood did not claim that material terms had been fraudulently omitted from a contract. Quoting *Nicolella v. Palmer*, 432 Pa. 502, 507–08, 248 A.2d 20 (1968), the district court held that " 'the parol evidence rule would become a mockery' " if Wood were allowed to void the letter of credit by averring " 'that false representations were fraudulently made.' " The court concluded that Wood's claim for fraudulent inducement was barred by the parol evidence rule and granted summary judgment against all of Wood's claims.

### III.

*Discussion of the Parol Evidence Rule and the District Court's Decision*

The parties have devoted substantial argument to whether the parol evidence rule may be invoked to bar Wood's fraud claim. However, we need not address their positions in this regard because the real issue in this case is whether the parol evidence rule has any applicability to the contract on which this particular claim is founded. The district court based its decision granting summary judgment for Donnelley on the assumption that Wood was seeking to utilize parol evidence to explicate or vary the terms of the letter of credit. That is, however, not what Wood's suit seeks to accomplish. Instead, Wood's suit is directed to the underlying oral agreement between him and Donnelley, which was separate and distinct from the letter of credit.

"A letter of credit is essentially a promise by the 'issuer' (commonly a bank) to the 'beneficiary' (usually a seller of goods) to extend credit on behalf of the beneficiary's customer (usually a buyer of goods)." *Toyota Indus. Trucks U.S.A., Inc. v. Citizens National Bank*, 611 F.2d 465, 429 (3d Cir.1979). As this description suggests, a letter-of-credit arrangement has three rela-

tionships. The first is the underlying contract, in furtherance of which the letter is made. This contract may be for the purchase and sale of goods, the construction of a building, the provision of services, or anything else which the parties wish to exchange. *See Toyota*, 611 F.2d at 469. The underlying contract is the "true" bargain between the parties, who will assume the statutory roles of "beneficiary" and "customer" through the letter-of-credit arrangement.

The second relationship is between the customer and the issuer by virtue of the former's instruction to make out a letter of credit in favor of the beneficiary. The issuer's obedience to this instruction produces the third relationship, namely, the letter of credit itself. The letter is the issuer's undertaking to purchase documents, presented by the beneficiary, that conform to the letter's terms. *Chase Manhattan Bank v. Equibank*, 550 F.2d 882, 885 (3d Cir.1977); *Arbest Constr. Co., Inc. v. First National Bank & Trust Co. of Oklahoma City*, 777 F.2d 581, 583–84 (10th Cir.1985); *Banco Nacional de Desarrollo v. Mellon Bank, N.A.*, 726 F.2d 87, 91 (3d Cir.1984); *Intraworld Indus. Inc. v. Girard Trust Bank*, 461 Pa. 343, 357, 336 A.2d 316 (1975). The essential function of this device is to assure a party to an agreement that he will receive the benefits of his performance. *Id.*, 461 Pa. at 357, 336 A.2d 316; *Penn State Constr., Inc. v. Cambria Sav. & Loan Ass'n*, 360 Pa.Super. 145, 148, 519 A.2d 1034 (1987); J. Dolan, *The Law of Letters of Credit*, Paragraph 2.08[2] (1984).

A variation on this arrangement is present where, as here, the bank issues a "stand-by" letter of credit. The beneficiary of an ordinary letter may draw upon it simply by presenting documents that show that the beneficiary has performed and is entitled to the funds. In contrast, a "stand-by" letter requires documents that show that the customer has defaulted on some obligation, thereby triggering the beneficiary's right to draw down on the letter. *See, e.g., Apex Oil Co. v. Archem Co.*, 770 F.2d 1353, 1355 (5th Cir.1985); *Penn State*, 360 Pa.Super. at 148, 519 A.2d

1034 (stating that letter which could be drawn down only by showing of customer's default or nonperformance was a "standby" letter); W. Hawkland & T. Holland, *Uniform Commercial Code Series*, Section 5–102:06, p. 17 (1984) (discussing nature of "stand-by" letter).

■ The letter's salient feature is its independence from both the customer-issuer transaction and the underlying contract between the customer and the beneficiary. *Arbest*, 777 F.2d at 583; *Chase Manhattan Bank v. Equibank*, 550 F.2d 882, 885 (3d Cir.1977). The issuer must honor conforming documents regardless of the terms that may, or may not, govern the underlying contract. 13 Pa.C.S.A. Section 5114(a) (Purdon 1984). A beneficiary who produces proper documents may draw on the letter even if he has not done the performance described by them. *Banco Nacional*, 726 F.2d at 91; *West Virginia Housing Development Fund v. Sroka*, 415 F.Supp. 1107, 1114 (W.D.Pa.1976); *Lindy v. Lynn*, 395 F.Supp. 769, 772 (E.D.Pa.1974), *aff'd. mem.*, 515 F.2d 507 (3d Cir.1975); *Intraworld*, 461 Pa. at 357, 336 A.2d 316; *Mercede Center, Inc. v. Equibank*, 359 Pa.Super. 388, 394, 518 A.2d 1291 (1986), *appeal denied*, 518 Pa. 619, 541 A.2d 746 (1987); 13 Pa.C.S.A. Section 5114(a) (Purdon 1984). Pennsylvania considers this independence necessary to preserve the "basic policy of letter of credit law," namely, "to ensure prompt payment to sellers." *Roman Ceramics Corp. v. Peoples National Bank*, 714 F.2d 1207, 1212 (3d Cir.1983).

■ The issuer must pay even if both the customer and the beneficiary are insolvent, rendering it impossible to obtain reimbursement for the issuer's honor. *Eakin v. Continental Illinois National Bank & Trust Co.*, 875 F.2d 114, 116–17 (7th Cir. 1989). The utility of the letter would be destroyed were it made to rely on the customer's credit, rather than the issuer's.

*Intraworld*, 461 Pa. at 357, 336 A.2d 316. Thus, in the case of a standby letter of credit, the issuer need not be concerned about the underlying contract or its terms. The two are separate and distinct agreements.

■ In this case, Wood contends that he was fraudulently misled by Donnelley in the underlying transaction between them. Thus, it is evident that his suit is not on his instruction to Continental, Continental's issuance of the letter of credit, the transaction between Donnelley and Continental, or any other aspect of the terms of the letter of credit. Because the evidence excluded by the district court pertained only to the oral agreement between Wood and Donnelley and was not intended to modify any written agreement, the parol evidence rule does not bar Wood's cause of action. Indeed, we need not address the extent to which the parol evidence would bar suit on any aspect of the letter of credit itself.[4]

It follows from the above that the district court erred as a matter of law in entering summary judgment for Donnelley on the basis of the parol evidence rule.

## IV.

*Whether Summary Judgment Would be Appropriate as to Appellant's Claim for Fraud*

■ It is not clear whether Donnelley argues that the summary judgment for it can be sustained on the ground that under Pennsylvania law Wood has failed to make out a claim for fraud. The discussion of fraud in Donnelley's brief on appeal is in the context of the parol evidence rule rather than in the context of defeating Wood's claim for fraud. Indeed, it does not appear that Donnelley's summary judgment motion rested on any claim that Wood had not alleged sufficient facts to satisfy the Pennsylvania rule that promises to do future acts do not constitute a valid fraud claim.

---

**4.** For the reasons set forth above, we reject appellees' argument that reversal would jeopardize the utility of letters of credit. Nothing in our decision alters the independence and binding nature of the issuer's obligation. Indeed, the contrary position would write section 5114(b) out of the code. Moreover, the letter's purpose is to assure the beneficiary that an amount will be paid to it. There is no concomitant guarantee that fraud, if proven, will go unexamined.

 

*See Sokoloff v. Strick,* 404 Pa. 343, 348, 172 A.2d 302 (1961); *Brentwater Homes, Inc. v. Weibley,* 471 Pa. 17, 23, 369 A.2d 1172 (1977).

In any event, we believe that it is appropriate for the district court in the first instance to address whether the representations made by Donnelley upon which Wood bases his suit were promises to do future acts, and hence incapable of sustaining a claim for fraud, or whether they contained statements of existing facts that were untrue, which can be the basis of a fraud claim in Pennsylvania. *See Nissenbaum v. Farley,* 380 Pa. 257, 110 A.2d 230 (1955).[5]

We note that the district court was familiar with the Pennsylvania principle that "a breach of faith or an agreement regarding the doing or refraining from doing something in the future is not fraud as that word is employed in the phrase 'fraud, accident or mistake,'" citing *Sokoloff v. Strick,* 404 Pa. at 350, 172 A.2d at 305. App. at 222. However, the district court analyzed this issue in the context of the letter of credit and failed to recognize that Wood's suit was being brought on the oral agreement between Donnelley and Wood. It follows that on remand, the district court will have to determine whether there is a genuine issue of material fact as to the nature of the promises made or whether, even accepting Wood's position with respect to the promises, they are insufficient as a matter of law to sustain the fraud claim.[6]

## V.

### Conclusion

For the reasons set forth above, we will reverse the entry of summary judgment and remand this matter to the district court for further proceedings in accordance with this opinion.

---

5. We note that even if Wood cannot allege fraud, the statute of limitations has not run on a breach of contract action. *See* 42 Pa.Cons.Stat. Ann. § 5525 (Purdon 1982). It is unclear whether Wood's complaint can be interpreted to encompass a breach of contract claim or, if not, whether there is a basis for the district court, if requested, to exercise its discretion and give leave to amend. We venture no opinion on this issue.

6. Donnelley argues that by modifying the letter of credit to extend its terms for two months, Wood agreed to a new contract that reaffirmed defendants' unconditional right to draw on the letter of credit. Because Wood is not suing on the letter of credit, we need not address this argument. The letter of credit was only the by-product of the agreement between Donnelley and Wood, and Donnelley's waiver argument is irrelevant to the issues raised on this appeal.