932 F.2d 975
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
EDDINS-WALCHER COMPANY, Plaintiff-Appellee,
v.
The FIRST NATIONAL BANK OF ARTESIA, a national banking
corporation, Defendant-Appellant.
 No. 89-2278.
 United States Court of Appeals, Tenth Circuit.
 May 6, 1991.
 
 Before STEPHEN H. ANDERSON and TACHA, Circuit Judges, and KANE,* District Judge.
 ORDER AND JUDGMENT**
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 This is an action seeking recovery under a letter of credit. Plaintiff Eddins-Walcher Company (Eddins) sued defendant First National Bank of ArtesiaBA seeking payment for supplies it provided contractor Yucca Drilling Company at a construction site in Ruidoso, New Mexico. After a bench trial, the district court ruled in favor of Eddins and awarded $22,599.71 in damages and $7,133.35 in attorney's fees. We affirm.
 
 Background
 
 3
 Eddins is a fuel and petroleum products supplier. Beginning in 1982, the company supplied materials to Yucca Drilling on an "open account" basis. During the course of their relationship, Eddins provided Yucca Drilling with petroleum products for use in several construction projects. In late 1983, however, Yucca Drilling fell behind in making payments on the account. Beginning in early 1984, Eddins' president made various attempts to collect the outstanding balance.
 
 
 4
 In July 1984, Yucca Drilling obtained a public works contract to drill water wells for the village of Ruidoso, New Mexico. Pursuant to requirements set forth under New Mexico statute, Yucca Drilling obtained a labor and materials bond for the job from Allied Fidelity Surety Company. See N.M.Stat.Ann. Sec. 13-4-18(A) (1978). At the request of Allied Fidelity and Yucca Drilling, FNBA then issued an irrevocable letter of credit providing indemnity in the event the surety was forced to make payment under the bond. Yucca Drilling was a customer of FNBA.
 
 
 5
 At the time the letter of credit was issued, Yucca Drilling owed substantial amounts on several outstanding loans with FNBA. The bank believed those loans could be repaid with the infusion of capital from the Ruidoso project. Therefore, it issued the letter of credit to Allied Fidelity for $366,813.00. This amount represented Yucca Drilling's bid on the project. FNBA also opened a line of credit for Yucca Drilling in that same amount. Performance on the project began in August 1984 and was substantially completed in February 1985.
 
 
 6
 During the course of the Ruidoso project, Eddins supplied Yucca Drilling approximately $45,000 worth of materials. In turn, between August and December 1984, Yucca Drilling made four payments on the Eddins open account totaling $45,000. These payments were applied to the oldest outstanding balance at the time. Due to the prior balance on the account, however, Yucca Drilling still owed Eddins $22,599.71 at the completion of the Ruidoso project. In August 1985, Eddins initiated steps to make a claim for this amount to Allied Fidelity under the labor and materials bond.
 
 
 7
 On August 19, 1985, Allied Fidelity made a demand on FNBA to comply with the letter of credit in the amount of $366,813.00. On August 29, 1985, the president of the bank responded. His letter read, in part, "The First National Bank of Artesia will not send any funds on the anticipation of claims being filed. If there has been a claim filed, please send a copy of the claim or claims and we will handle them on a claim-by-claim basis." See Addendum to Appellant's Brief In Chief at 54. Allied Fidelity agreed to this arrangement.
 
 
 8
 In January 1986, Eddins began communicating directly with FNBA regarding the claim. Supporting documents were filed initially with Allied Fidelity in September 1985 and with the bank in January 1986. From January through May 1986, Eddins made various attempts to have the claim paid. On May 29, 1986, FNBA sent Eddins a letter requesting further information. Sometime after June 13, 1986, FNBA denied Eddins' claim on the basis that suit was not filed within one year of completion of the project as is required under New Mexico statute. See N.M.Stat.Ann. Sec. 13-4-19(C) (1978) (also known as the Little Miller Act). Allied Fidelity went into receivership in March 1986. Yucca Drilling filed for bankruptcy later that same year. This lawsuit was filed on June 27, 1987.
 
 
 9
 In the district court, FNBA contended it stepped into the shoes of the surety company and, therefore, could assert the one-year suit limitation as a defense. Further, it argued the bank had no obligation under the bond because neither the surety nor the contractor ever sustained a loss on this claim. In the alternative, FNBA argued that even if the claim was timely, Eddins' accounting methods were improper, making denial appropriate.
 
 
 10
 Eddins argued that FNBA's actions following Allied Fidelity's demand on the letter of credit took the claim outside the restrictions of the Little Miller Act and constituted a novation of the letter of credit contract. Eddins asserted it was a third-party beneficiary to the letter of credit. The district court agreed with Eddins and awarded the full amount of the claim. The court also awarded attorney's fees.
 
 Discussion
 
 11
 When the myriad of contractual relationships and factual underpinnings in this case are distilled, we are left with the one question which is central to our disposition. That is, whether Eddins may recover under the irrevocable letter of credit the bank issued to Allied Fidelity. This issue involves mixed questions of law and fact. See Supre v. Ricketts, 792 F.2d 958, 961 (10th Cir.1986). "[W]hen a finding on a question of law is made by the district court upon the presentation of evidence, the finding becomes properly a mixed question of law and fact." Mullan v. Quickie Aircraft Corp., 797 F.2d 845, 850 (10th Cir.1986).
 
 
 12
 In this case, the standard for determining when a third party may recover under a letter of credit is essentially legal, and, therefore, calls for de novo review. See Supre, 792 F.2d at 961. Any pure findings of fact, however, are subject to the clearly erroneous standard. See Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985); Fed.R.Civ.P. 52(a).
 
 
 13
 The letter of credit is a unique device in the law of commercial transactions. The "standby" credit at issue here is designed to act as a back up against customer default on both monetary and nonmonetary obligations. See 2 J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code, Practitioner's Edition, Sec. 19-1, at 4 (3d ed. 1989) (hereinafter White & Summers). When procured for a construction project, the surety's standby letter of credit usually arises in the following context:
 
 
 14
 Suppose owner insists on a conventional ... bond from an actual surety. [Contractor] procures one, but now surety wants protection that [contractor] will make surety whole, if owner calls the bond for [contractor's] performance failure. So [contractor] again asks his bank to write a standby letter. [Contractor] is still the customer and his bank still the issuer, but now the standby letter's beneficiary is surety. And now bank engages to pay beneficiary-surety upon his presentment of a sight draft and a statement certifying that surety's bond stands to be called by owner (who has no rights under the letter of credit itself).
 
 Id. at 5. (Footnote omitted.)[1]
 
 15
 The various contractual relationships involved in the construction project are legally distinct for purposes of evaluating obligations under the letter of credit. See Arbest Constr. Co. v. First Nat'l Bank & Trust Co., 777 F.2d 581, 583 (10th Cir.1985). "Thus, ... the [credit] issuer need not be concerned about the underlying contract or its terms. The two are separate and distinct agreements." Wood v. R.R. Donnelley & Sons Co., 888 F.2d 313, 318 (3rd Cir.1989). The letter of credit contemplates an absolutely independent obligation on the part of the issuer. American Ins. Ass'n v. Clarke, 656 F.Supp. 404, 412 (D.D.C.1987) (citing First Empire Bank-New York v. FDIC, 572 F.2d 1361, 1366 (9th Cir.), cert. denied, 439 U.S. 919 (1978)), aff'd, 865 F.2d 278 (1988). To this extent, the issuer is obligated to comply with a proper demand under the letter of credit even if both the customer and the beneficiary are insolvent, leaving the issuer without recourse for reimbursement. See Wood, 888 F.2d at 318. The letter of credit is unique in that it is premised on the concept of "pay now, argue later." See Eakin v. Continental Ill. Nat'l Bank & Trust Co., 875 F.2d 114, 116 (7th Cir.1989).
 
 
 16
 Therefore, to the extent Allied Fidelity made a proper demand on the letter of credit, the bank was obligated to pay, regardless of its conclusions as to the merit of the claim.[2] See Arbest, 777 F.2d at 584 ("[T]he general rule is that the issuer may not consider problems with the underlying transaction when deciding whether to honor a demand.") (footnote omitted); see also N.M.Stat.Ann. Sec. 55-5-114(1) (1978) (regarding obligation to honor demand on letter of credit).
 
 
 17
 Moreover, because the letter of credit obligation is independent of the contractual relationship underlying the construction bond, the provisions of the Little Miller Act and the labor and materials bond are of no consequence in determining whether Eddins can make a claim as a beneficiary. The letter of credit contract is absolutely independent from the other contract documents underlying this action. See White & Summers, Sec. 19-2, at 8 (bank's obligation is independent of the beneficiary's performance on the underlying contract). Because the provisions of the Little Miller Act are not controlling, its one-year suit limitation does not apply. Thus, the district court did not err in ruling Eddins made a timely claim.
 
 
 18
 This assessment does not, however, end our inquiry. We still must address the question whether Eddins is a proper beneficiary of the letter of credit. In this regard, the determinative question is whether FNBA and Allied Fidelity's actions following the bank's wrongful dishonor altered the terms of the letter of credit, thus making Eddins a new beneficiary. We address this issue below.
 
 
 19
 Normally, disappointed subcontractors cannot be third-party beneficiaries to a letter of credit absent proper assignment or transfer. See N.M.Stat.Ann. Sec. 55-5-116(1) (1978) (right to draw under letter of credit cannot be transferred or assigned unless the credit expressly allows it); Arbest, 777 F.2d at 584-85; see also Ahmed v. National Bank of Pak., 572 F.Supp. 550, 553 (S.D.N.Y.1983) (holding that beneficiary's agents could not be third-party beneficiaries under the letter of credit); M. Golodetz Export Corp. v. Credit Lyonnais, 493 F.Supp. 480, 487 (C.D.Cal.1980) (holding that seller of goods to beneficiary could not maintain action on credit). But see Midstates Excavating, Inc. v. Farmers & Merchants Bank & Trust, 410 N.W.2d 190, 194-95 (S.D.1987) (holding that third parties may enforce letter of credit).[3] Here, there was no proper assignment or transfer. Therefore, the district court erred when it determined Eddins could be a third-party beneficiary to this letter of credit.
 
 
 20
 This error does not, however, require reversal. FNBA never raised this issue in the district court. The first time the bank cited the Arbest decision, which holds that third parties generally cannot be beneficiaries to a letter of credit, was in its reply brief before this court. We will not consider arguments raised for the first time in the litigation in a reply brief on appeal where they were not raised in the district court. See Hirschfeld v. New Mexico Corrections Dep't, 916 F.2d 572, 578 (10th Cir.1990); United States v. Jenkins, 904 F.2d 549, 554 n. 3 (10th Cir.1990).
 
 
 21
 Accordingly, the judgment of the United States District Court for the District of New Mexico is AFFIRMED.
 
 
 
 *
 Honorable John L. Kane, Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 In this case, the scenario is altered slightly, as the bond is one for labor and materials. The potential claimants under the bond, therefore, are contractor's suppliers, rather than the owner
 
 
 [2]
 Here, the letter of credit obligated FNBA to pay Allied Fidelity $366,813.00 if, in the surety's judgment, a claim had or would be made. The bank was obliged to pay the entire amount, regardless of the amount of the claim. See Addendum to Appellant's Brief in Chief at 12 (letter of credit)
 
 
 [3]
 Letter of credit authorities have criticized the Midstates' opinion, finding it a "significant departure from letter of credit principles." J. Dolan, The Law of Letters of Credit, Sec. 1.05, at 1-20 through 1-21 (2d ed. 1991)